Juanita E. McNEIL, Plaintiff,

v.

Marie AGUILOS and Bellevue Hospital
Corporation, Defendants.

No. 91 Civ. 6938 (SS).

United States District Court,
S.D. New York.

Sept. 16, 1993.

Juanita E. McNeil, pro se.

James Girillo, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

SOTOMAYOR, District Judge.

At the heart of this action are the allegations by *pro se* plaintiff Juanita McNeil, an English-speaking African–American, that Filipina–American nurses spoke Tagalog in her hospital workplace in order to isolate and harass her, and that their communication in Tagalog impeded her ability to perform her job effectively. The questions in this case are troubling, and the issues and problems are likely to become more pervasive as our society grows increasingly multiracial and polyglot. There is no simple solution, for just as a workplace English-only policy potentially violates the rights of non-English speakers, plaintiff here contends that allowing co-workers to communicate in a foreign language violates her rights, as a native English speaker. *See, e.g.,* Equal Employment Opportunity Commission ("EEOC") Guidelines on Discrimination Because of National Origin, 29 C.F.R. § 1606.7(a) (1991) ("A rule requiring employees to speak only English at all times in the workplace is a burdensome term and condition of employment. The primary language of an individual is often an essential national origin characteristic. Prohibiting employees at all times, in the workplace, from speaking their primary language or the language they speak most comfortably, disadvantages an individual's employment opportunities on the basis of national origin.").

Plaintiff's claims will ultimately be addressed at trial. Currently before the Court are cross-motions for summary judgment on a variety of issues. As explained below, de-fendants' motion for partial summary judgment, which concerns a number of procedural and statutory issues, is **GRANTED IN PART, and DENIED IN PART.** Plaintiff's motion for summary judgment, which addresses almost. entirely the substance of her claims, is **DENIED.**

## I. *Background*

*Pro se* plaintiff Juanita McNeil seeks to recover from defendants Marie Aguilos and the Bellevue Hospital Corporation pursuant to Title VII and 42 U.S.C. § 1981.

McNeil began working · for defendant Bellevue Hospital Corporation as a clerical office aide in August 1982. She transferred into Bellevue's pediatric nursing unit in 1984, where, she claims, defendant Marie Aguilos, the supervising head nurse of that unit, improperly trained her and subjected her to discriminatory treatment.

McNeil complained to Bellevue's Director of Nursing in 1985 about Ms. Aguilos's treatment of her. She also complained that many of the nurses in the pediatric unit, including Aguilos, were from the Philippines and frequently spoke Tagalog, a Filipino language. Plaintiff alleges that Bellevue retaliated against her for these complaints by assigning her extra clerical duties for several months. Subsequently, Bellevue's Nursing Administration convened a meeting on October 22, 1985, to address her complaints. Although no action was taken against Aguilos as a result of this meeting, McNeil was transferred to a different shift within the pediatric unit, supervised by a different head nurse. McNeil describes numerous discriminatory incidents and alleges that the harassment and discriminatory treatment continued until her constructive discharge in late 1990.

Plaintiff filed a charge of discrimination with the EEOC on November 15, 1990, accusing Ms. Aguilos of race discrimination, harassment, failure to supervise plaintiff, and using the Tagalog language as a discriminatory weapon against her and other non-Filipinos. Among her charges, she states that "on September 10, 1990 Marie Aguilos gave the unit report in Tagalog and when [McNeil] asked her the diagnosis of a specific patient she refused to tell [her]." A letter

from Ms. McNeil to the EEOC, dated December 21, 1990, alerted the EEOC to additional difficulties that Ms. McNeil was experiencing at her job. The letter also mentioned that she had been unfairly denied promotions. The EEOC issued a right-to-sue letter dated June 24, 1991.

On September 23, 1991, plaintiff commenced this action in this Court, alleging, *inter alia,* discrimination on the basis of race, national origin, and language, as well as retaliation. She alleges that as a result of the discrimination and retaliation, she was denied transfers and constructively discharged from her position. She seeks compensation, including back pay and benefits, and the institution of a policy requiring employees to speak in English, but "only while they are actually performing a job duty."

Judge Lawrence M. McKenna entered a default judgment against defendants on August 26, 1992. The case was subsequently transferred to me, and by order dated January 27, 1993, I granted defendants' motion to vacate the default pursuant to Fed.R.Civ.P. 60(b). I subsequently denied plaintiff's motion to certify the January 27, 1993 Order pursuant to 28 U.S.C. § 1292(b), which would have permitted her to petition the Court of Appeals for leave to pursue an interlocutory appeal. *See* 820 F.Supp. 77. Defendants thereafter moved for partial summary judgment.

Plaintiff cross-moves for summary judgment. In their response to plaintiff's motion, defendants included the affidavit of defendant Marie Aguilos and that of Mofti Aujero, who has been the Associate Director of Maternity and Child Health in Bellevue Hospital's Department of Nursing since 1987. Plaintiff addressed these affidavits in her reply papers.

Plaintiff appended to her papers a newspaper article that summarizes her position regarding the problems that may arise when different languages are spoken in a workplace. Without addressing its status as evidence in this motion, the Court quotes the following excerpt as illustrative of McNeil's position:

Juanita McNeil was checking a patient's chart in a pediatric intensive care unit when two nurses sitting at the desk next to her starting talking loudly.

"Loka, Loka," the nurses said over and over.

McNeil, a clerk, did not ask what they meant [thinking it to be a private conversation]. . . . the nurses left and a woman came in and asked to see her baby.

"She was acting very strange, but it was her baby, so I said, 'Come on mommy, let's go see your baby,'" she said. But the woman's demeanor made McNeil go find the nurses.

"They said, 'Oh, no, you didn't leave her alone with the baby, did you? We forgot to tell you, but OB/GYN just called and said she was coming down, but not to leave her alone with the baby, she's crazy.'"

In Tagalog, the main language of the Philippines, "loka-loka" means crazy woman, and the nurses' phone call was a warning to watch the mother, McNeil said. [The baby was fine, after all.]

"Language Conflicts," in *New York Newsday,* May 19, 1993, at 15.

## II. *Discussion*

Summary judgment may be granted where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "[T]he judge's function is not himself [or herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 250, 106 S.Ct. at 2511. Thus, the Court must perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all reasonable inferences, against the moving party. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82

S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987).

### Defendants' Motion for Partial Summary Judgment

#### The Title VII Claims

Title VII prohibits an employer from failing to hire or from discharging an individual,

> or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1). Title VII similarly bars an employer from

> limit[ing], segregat[ing], or classify[ing] his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(2).[1]

There is an elaborate statutory scheme for the enforcement of these rights. Thus, a Title VII claim is barred if a plaintiff fails to file a timely charge with the EEOC. *Butts v. City of New York Department of Housing Preservation and Development*, 990 F.2d 1397 (2d Cir.1993); *Gomes v. Avco Corp.*, 964 F.2d 1330, 1332–33 (2d Cir.1992). Since New York State has an agency authorized to address charges of discrimination in employment, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days. *Butts;* 42 U.S.C. § 2000e–5(e).

Plaintiff's EEOC charge was filed on November 15, 1990, and therefore all of her Title VII claims prior to January 15, 1990, are time-barred and must be dismissed unless they fall into the "continuous violation" exception to the Title VII statute of limitations. *Butts*, 990 F.2d at 1404. The "continuous violation exception applies only where discrimination is accomplished through a specific official policy or mechanism." *Id.*, citing *Cook v. Pan American World Airways, Inc.*, 771 F.2d 635 (2d Cir. 1985), *cert. denied*, 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986). Although her papers are far from clear on this issue, it appears that plaintiff is alleging that Bellevue's official policy of allowing nurses to communicate in Tagalog on the job was a continuous violation of her rights under Title VII. These allegations apply equally to Ms. Aguilos, who, as her supervisor and as an agent of Bellevue, purportedly gave effect to such policy.[2] There is without question sufficient dispute and ambiguity on the facts concerning this issue to defeat a motion for summary judgment.

Ms. McNeil's allegations regarding harassment, denied promotions, and constructive termination subsequent to her filing of the EEOC charge will also not be dismissed. It is true that a district court lacks jurisdiction over Title VII claims unless they are included in an EEOC charge. The purpose of this notice and exhaustion requirement is to encourage settlement through conciliation and voluntary compliance, and would be defeated if a plaintiff could litigate a claim not previously presented to and investigated by the EEOC. *Id.* A district court may, however, consider allegations missing from that discrimination charge if they are "reasonably related" to conduct actually alleged in the charge. *Butts*, 990 F.2d at 1401–02. Plaintiff has introduced evidence, such as her December 21, 1990 letter, suggesting that

---

1. Although they suggest there may be a problem, defendants do not challenge, and thus the Court need not address at this time, how language discrimination fits into this statutory framework. McNeil has framed her allegations in terms of race and national origin, contending that she was discriminated against because she is not Filipina; discrimination on the basis of not being Filipina—whether because she is African–American in particular, or simply not Filipina—would appear to be barred under Title VII. McNeil alleges that the use of Tagalog by the Filipina nurses was one way that she was discriminated against on the basis of her status as a non-Filipina.

2. Ms. McNeil also implicitly alleges that Bellevue's policies regarding complaints "protected" those accused of discriminatory practices and thereby perpetuated the harassment and racism she claims that she experienced.

she was denied promotions and was constructively discharged after she filed her EEOC charge at least in part for retaliatory reasons. Whether or not these claims are "reasonably related" to those in her charge therefore raises disputed factual questions sufficient to survive a motion for summary judgment.

Thus, that portion of defendants' motion for partial summary judgment which seeks to dismiss plaintiff's Title VII claims is denied.

### The Section 1981 Claims

42 U.S.C. § 1981 states, in pertinent part:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens ...

McNeil alleges race discrimination as well as language discrimination. Because defendants have not raised the issue of how language discrimination fits within the rubric of Section 1981, the Court need not address this question at this time. See note 1, supra.

The Second Circuit held in Butts that § 1981 actions commenced prior to November 21, 1991, the effective date of the Civil Rights Act of 1991, are governed by Patterson v. McLean Credit Union, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Since this action was filed on September 23, 1991, the 1991 Civil Rights Act does not apply to it and instead Patterson is applicable. Patterson held that Section 1981 redresses discrimination in the formation of contracts but not in contract performance, and thus does not create a cause of action for discrimination in the terms and conditions of employment.

■ Plaintiff alleges that her Section 1981 claim is predicated on

purposeful discriminatory violations, lack of protection against retaliation for objecting to racial discrimination, failure to act when notified that [her] employment contract was being enforced differently according to race, and therefore [she] was not being allowed to be a viable party to a contract for the security of [her] person and [her] property (job) as is enjoyed by white citizens (or Filipinos in this situa-

tion), knowingly allowing the pervasive use of a foreign language in reference to the job, which constructively discharged [her] and others from [their] jobs, which effectively denied [them] due process or equal protection, upon which relief can be granted.

Under Patterson, however, these allegations of discrimination, retaliation, and constructive discharge do not state a cause of action under Section 1981 and therefore these claims must be dismissed.

■ Patterson left open the possibility of recovering under Section 1981 on a claim of discrimination in promotion. Thus, the Supreme Court observed that such a claim could give rise to a cause of action, "but only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer." 491 U.S. at 185, 109 S.Ct. at 2377.

In her complaint, plaintiff alleges that she applied to Bellevue for many promotions and transfers between 1985 and 1990. Although she was unable to identify any of the positions or the date of application for any position, she explained that she was told it was unnecessary to file an application each week for all the posted jobs, because "only one application was needed to assess [her] qualifications for the posted jobs." Plaintiff's Response to Defendants' Motion for Partially Summary Judgment, at 1. She further explained that "the[y] were not professional jobs, [but] were just jobs that paid more, and entailed more responsibility." Id.

There has only been limited, preliminary discovery in this matter thus far. Plaintiff should be given an opportunity to secure discovery about the positions that were posted while she was seeking her transfer so that she may identify with greater particularity those positions that were "new and distinct" and for which she was qualified. Accordingly, I deny the motion for summary judgment with respect to this issue at this time, with leave for defendants to move anew once discovery on this issue has been concluded.

■ Finally, in actions brought pursuant to Section 1981, a court should look to

the state statute of limitations for personal injury actions. *Butts*, 990 F.2d. at 1412, citing *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660–62, 107 S.Ct. 2617, 2620–22, 96 L.Ed.2d 572 (1987). In New York, the applicable statute is C.P.L.R. § 214(5), which sets forth a three-year limitation period. *Butts*, 990 F.2d at 1412. Since McNeil filed her complaint on September 23, 1991, claims for acts that took place prior to September 23, 1988, are time-barred and must be dismissed.

All of plaintiff's Section 1981 claims except those alleging that she was discriminatorily denied promotions on or since September 23, 1988 are therefore dismissed.

### The State Law Claims

■ In a handwritten paragraph next to the caption of plaintiff's form complaint, McNeil suggests that she seeks to pursue additional state law claims against defendants. The paragraph states "Racial & Reverse Discrimination, National Origin Discrimination, Negligence, Cruel & Unjust Punishment, Harassment and Endangering Public Safety." (Punctuation added). It is unclear whether McNeil has actually framed any state law claims in her Complaint. In any event, defendants move to dismiss these state law claims on the grounds that McNeil has failed to comply with the notice of claim requirements of New York General Municipal Law §§ 50–e and 50–k and New York Unconsolidated Law § 7401(2).[3]

■ Under New York law, before a tort action may be filed against the Health and Hospitals Corporation,[4] plaintiff must effect service of a notice of claim as required by N.Y.Gen.Law §§ 50–e and N.Y.Unconsol.Laws § 7401. Section 50–e specifies the form of the notice and the manner of the service. Even in federal court, the compliance with these provisions is a condition pre-

cedent to a tort action against the HHC. *Wrenn v. New York City Health and Hospitals Corporation*, 104 F.R.D. 553 (S.D.N.Y. 1985). These requirements apply with equal force to actions prosecuted by *pro se* plaintiffs. *Wrenn; Davidson v. Bronx Municipal Hospital*, 64 N.Y.2d 59, 484 N.Y.S.2d 533, 473 N.E.2d 761 (1984). It is undisputed that Ms. McNeil did not comply with these notice of claim provisions,[5] and plaintiff's putative state law claims against defendant Bellevue are dismissed.

Defendants have not convinced the Court, however, that the state law claims against Marie Aguilos should be dismissed. N.Y. General Municipal Law 50–e(1)(b) expressly provides that "[s]ervice of the notice of claim upon an ... employee of a public corporation shall not be condition precedent to the commencement of an action or special proceeding against such person," and defendants have not suggested or argued that this provision does not govern the claims against Ms. Aguilos. Consequently, plaintiff's putative state law claims against defendant Aguilos shall not be dismissed.

### Plaintiff's Cross–Motion For Summary Judgment

■ Plaintiff cross-moves for summary judgment on a number of different statutory grounds. As discussed above, summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It must be emphasized to plaintiff that the Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *See H.L. Hayden Co. v. Siemens Medical Systems*, 879 F.2d 1005, 1011 (2d Cir.1989). The moving party always

---

3. Defendants' memoranda of law suggest that plaintiff's error lay in her non-compliance with subdivision 1 of § 7401; subsequent correspondence with the Court specifies subdivision 2 as the governing statute, and the Court agrees that this is the pertinent and correct citation.

4. Throughout these proceedings, defendants' attorney has emphasized, and it has not been disputed, that named defendant Bellevue Hospital is part of the New York City Health and Hospitals Corporation ("HHC"). The notice of claim re-

quirements for HHC therefore apply to the claims against named defendant Bellevue Hospital.

5. McNeil does not dispute that she did not comply with the notice requirements. She instead suggests that it was incumbent on Bellevue to notify the HHC once she filed an EEOC charge and the EEOC began its investigation. The statute, however, expressly sets forth particular notice requirements, and these are not satisfied by an EEOC filing.

bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record that purportedly demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In this District, any party who moves for summary judgment must "annex[ ] to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 3(g). Moreover, "[f]ailure to submit such a statement constitutes grounds for denial of the motion." *Id.* Although plaintiff's motion could be denied on these grounds, the Court is cognizant that some solicitude should be given *pro se* plaintiffs. The Court therefore looks to the merits of plaintiff's motion to determine whether any remedial action— such as directing plaintiff to file a Rule 3(g) statement—may save what would otherwise be a meritorious motion. This task is simplified for the Court since the defendants filed their own Rule 3(g) statement in opposition to plaintiff's motion, which plaintiff subsequently addressed in her reply papers.

At the outset, plaintiff has not met her burden of identifying particular promotions that she was denied; this is sufficient to deny her motion for summary judgment on Section 1981. Moreover, as set forth in the affidavits of Marie Aguilos and Mofti Aujero, and from defendants' Rule 3(g) statement, it is clear that there are genuine issues of material fact regarding McNeil's discrimination and retaliation claims. Ms. Aguilos denies that she harassed, discriminated against, or otherwise impeded plaintiff in her work efforts, and disputes McNeil's contentions that she blocked her attempts to be promoted or transferred. The affidavits also dispute plaintiff's contentions that the Filipino nurses discriminated against non-Filipinos or used their language to impede, harass, or exclude plaintiff. Ms. Aujero similarly denies that the hospital discriminated against plaintiff. In addition, Ms. Aujero also disputes that Bellevue disciplined the plaintiff or retaliated against her for complaining about Ms. Aguilos.

Thus, plaintiff's motion for summary judgment on her discrimination and retaliation claims must be denied because she has failed to demonstrate that there are no genuine issues of material fact.

Defendants suggest that as a result of plaintiff's failure to file a Rule 3(g) statement controverting the material facts set forth in defendants' Rule 3(g) statement opposing the motion, the material facts in defendants' Rule 3(g) statement must be deemed admitted. *See General Electric v. New York Dept. of Labor,* 936 F.2d 1448, 1452 (2d Cir.1991). In her reply papers, however, McNeil disputes each and every allegation in defendants' Rule 3(g) statement on the grounds that the affidavits of Marie Aguilos and Mofti Aujero are "primarily false and untrue." She also offers a paragraph-by-paragraph rebuttal of those affidavits. This is a sufficient submission by a *pro se* plaintiff such that the Court finds that there are genuine issues of material fact and therefore will not enter summary judgment in defendants' favor with regard to plaintiff's discrimination and retaliation claims.

Plaintiff's motion for summary judgment also raises a laundry list of statutes allegedly violated by the defendants and for which she seeks recovery. The Court need not consider claims raised for the first time in a motion for summary judgment in deciding that motion. *Leone v. Advest, Inc.,* 624 F.Supp. 297, 305 (S.D.N.Y.1985). Even accepting the allegations in the Complaint as true, however, the majority of these claims may be dismissed as a matter of law. As a matter of judicial efficiency, therefore, the Court at this time addresses whether or not these claims should be dismissed.

Plaintiff argues that she must prevail on an antitrust theory, contending that Bellevue has created a monopoly of Filipino nurses in violation of 15 U.S.C. §§ 1–27. Under 15 U.S.C. § 17, however, "the labor of a human being is not a commodity of article of commerce" subject to the anti-trust laws. In her reply, McNeil suggests that she is arguing that the Filipino nurses are attempting to establish a monopoly on information in the nursing profession in order to exclude

those who do not speak Tagalog. This, however, is a discrimination claim; the antitrust laws are concerned with interstate commerce, which is not implicated here.

▆▆▆▆ Plaintiff similarly cannot prevail under 18 U.S.C. § 245, which makes it a violation for anyone who "whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with [any person]." 18 U.S.C. § 245(b)(1). Nonviolent civil rights violations, such as those alleged by plaintiff, do not fall within the purview of the statute. *See Johnson v. State of Mississippi*, 421 U.S. 213, 223–27, 95 S.Ct. 1591, 1597–99, 44 L.Ed.2d 121 (1975). Moreover, the statute confers no private right of action, and therefore plaintiff lacks standing to prosecute on her own behalf. *See John's Insulation, Inc. v. Siska Const. Co., Inc.*, 774 F.Supp. 156, 163 (S.D.N.Y.1991).

Plaintiff's claim under 42 U.S.C. § 1982, which addresses rights concerning "real and personal property," is similarly legally deficient because plaintiff's job is not within the purview of that statute.

Any claim that plaintiff has brought pursuant to 42 U.S.C. § 1983 is deficient because she has failed to allege that the actions complained of were under color of state law. The Court will, however, entertain a motion to amend the Complaint if plaintiff wishes to pursue a Section 1983 claim.

▆▆▆▆ Plaintiff's 42 U.S.C. § 1985(3) claim that Aguilos and Bellevue conspired to deprive her of substantive rights in the workplace is not actionable because it must be brought under Title VII. *See Castle v. Central Benefits Mut. Ins. Co.*, 751 F.Supp. 717 (S.D.Oh.1990), *aff'd*, 940 F.2d 659 (6th Cir. 1991). In enacting Title VII, Congress established a comprehensive plan for addressing allegations of employment discrimination.

> If a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of these detailed and specific provisions of the law.... The short and precise time limitations of Title VII would be grossly altered. Perhaps most importantly, the complainant could

completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII.

*Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). Although plaintiff could conceivably have a right to action under Section 1985 for violation of her Section 1981 contractual rights as an employee, *see Castle*, she has not alleged such a violation.

Under 42 U.S.C. § 1988(b), attorney's fees may be awarded to "the prevailing party." Neither party has prevailed in this action thus far. The question of attorney's fees, including whether or not a *pro se* party is entitled to attorney's fees at all, may properly be addressed after trial.

In sum, plaintiff's motion for summary judgment must be denied in its entirety.

### III. *Conclusions*

This suit raises difficult legal issues, some of first impression, all of great importance. Although plaintiff's desire to resolve the case expeditiously may have led her to oppose any efforts to obtain *pro bono* counsel because of the delay that would result from staying the action during the search for counsel, it is clear now that the action cannot be resolved at the summary judgment stage and an extremely expeditious resolution is simply not possible. The importance of the issues and their position on the "cutting edge" of civil rights law suggest that eager, competent counsel should be readily obtainable and delays should not be too severe. Moreover, the complexity of the action, and the near certainty that plaintiff will be unable to prosecute it to her greatest advantage, advise strongly in favor of assigning *pro bono* counsel. Accordingly, I am prepared to appoint *pro bono* counsel should plaintiff so request.

For the reasons stated above, defendants' motion for partial summary judgment is **GRANTED IN PART,** to the extent that all of plaintiff's Section 1981 claims are dismissed except those alleging that she was discriminatorily denied promotions on or since September 23, 1988, and all of plain-

tiff's state law claims against defendant Bellevue Hospital are dismissed. The remainder of defendants' motion is **DENIED**. Plaintiff's cross-motion for summary judgment is **DENIED** in its entirety.

For the reasons that I stated on the record during the August 27, 1993, oral argument, plaintiff's motion to compel documents is **DENIED**.

Plaintiff may move for the assignment of *pro bono* counsel by October 12, 1993. At the next conference in this case, I will set a date before which she may file an amended complaint consistent with this Order.

**SO ORDERED.**