The TOWN OF NEW WINDSOR and the State of New York, Plaintiffs,

v.

TESA TUCK, INC. and Lightron Corporation, Inc., Eugene Littman, Harry Basch, Mearl Corporation, and Kollmorgen Instruments Corporation, Defendants.

TESA TUCK, INC. and Lightron Corporation, Inc., Third–Party Plaintiffs,

v.

The UNITED STATES of America, James S. Patsalos, James S. O'Neill, Charles T. Kavanagh, Cornell Group Service Corp., the New York State Department of Transportation, City of Newburgh, and the New York State Thruway Authority, Third–Party Defendants.

No. 92 CV 8754 (BDP).

United States District Court, S.D. New York.

July 17, 1996.

Kimberly Shaw Rea, Bleakley, Platt & Schmidt, White Plains, NY, for Plaintiffs.

Nicholas Z. Hegedus, Kiefferr and Hahn, New York City, for Defendant, Third Party Plaintiff and Cross Claimant Tesa Tuck.

Robert Emmet Hernan, Asst. Atty. Gen., N.Y.S. Department of Law, Environmental Protection Bureau, New York City, for Third Party Defendants N.Y.S. Thruway Authority, the N.Y.S. Dept. of Transportation and the State of New York.

Edwin Eisen, Eisen, Herschcopf & Schulman, New York City, for Third Party Defendant Mearl Corporation.

Donna Frosco, Keane & Beane, White Plains, NY, for Defendant and Third Party Plaintiff Lightron Corporation.

Gideon A. Schor, Asst. U.S. Atty., United States Attorney's Office, New York City, for Third Party Defendant United States of America.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

### FACTS

This action under the Comprehensive Environmental Response, Compensation and Li-

ability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), P.L. 99–499 (October 17, 1986), and state law is before this Court on the motion of third-party defendant, the New York State Department of Transportation ("DOT"), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Third-party plaintiffs have asserted CERCLA § 113(f) claims for contribution against DOT on the ground that DOT is an owner of a facility from which there has been a release of hazardous substances. Familiarity with the facts and this Court's prior decision of March 14, 1996 is assumed. The facts specifically relevant to this motion are summarized below.

The DOT presently owns property adjacent to the New Windsor landfill. Prior to 1970, a portion of that property was owned by the United States of America. On October 16, 1970, the United States' property was deeded to the Metropolitan Transportation Authority ("MTA"). Ownership of that property, as well as 8000 additional acres that had been acquired by the MTA, was transferred to the DOT, pursuant to New York State Transportation Law § 400, Chapter 370, § 5, L.1982, which became effective June 21, 1982.

The landfill, which the Town of New Windsor operated between 1962 and 1976, encroached upon the property now owned by DOT. The area of the encroachment has been leased by DOT to the United States of America for use by the Air National Guard, the Marine Corps Reserve, and the United States Air Force since April 1, 1983, pursuant to New York State Transportation Law § 400(3)(h)(i), (ii).

In January 1992, the Town notified DOT that it had determined that a portion of the landfill was on DOT property and inquired into the feasibility of DOT conveying that portion of the land to the Town. *See* Exhibit 2, letter from the Town to DOT, dated January 3, 1992. DOT requested the Town to identify the area of encroachment. *See* Exhibit 3, letter from DOT to the Town, dated January 13, 1992. DOT rejected the request to convey the land to the Town, however, allegedly because it was prohibited from al-

lowing such a facility to be located on that portion of the property. *See* Baldwin Declaration ¶ 20; New York State Transportation Law § 400(5).

In February 1992, the New York State Department of Environmental Conservation provided DOT with the preliminary design documents for the landfill remedial program for comment. *See* Exhibit 4, letter from DEC to DOT, dated February 5, 1992. In response, DOT sent DEC comments indicating that the actual area of encroachment was not clearly described, that FAA approval might be necessary for certain activities, and that the Town had requested that DOT convey the encroached area to it. *See* Exhibit 5, letter from DOT to DEC, dated February 14, 1992.

In April 1992, DOT offered to provide fill material from another existing landfill site on the property. *See* Exhibit 6, letter from DOT to DEC, dated April 10, 1992; Exhibit 7, letter from DEC to the Town, dated April 14, 1992. The Town later rejected this offer. *See* Exhibit 13, letter from Chemical Waste Management, Inc. to DOT, dated December 16, 1992. Also in April 1992, DOT requested of its leasee, the Air National Guard, that it be advised as to what documentation would be needed to grant an easement to the Town so that it could remove landfill materials from within the Air National Guard leasehold property. See Exhibit 8, letter from DOT to Air National Guard, dated April 23, 1992.

DOT now moves for summary judgment on the grounds that (1) because it acquired the property involuntarily, § 101(20)(D) applies to exclude it from the definition of "owner," and (2) because it exercised "due care" with regard to the hazardous substances that had been inadvertently dumped on a portion of the Airport property when DOT did not own it, § 107(b)(3)'s Third–Party Defense applies.

**DISCUSSION**

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Fed.R.Civ.P. 56(c). The Court's responsibility is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *McNeil v. Aguilos,* 831 F.Supp. 1079, 1082 (S.D.N.Y. 1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)); *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See McNeil,* 831 F.Supp. at 1082 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962) (per curiam) (other citations omitted)). *See also Coach Leatherware Co., Inc. v. AnnTaylor, Inc.* 933 F.2d 162, 167 (2d Cir.1991) (citations omitted).

▇ Liability under CERCLA is imposed where a plaintiff establishes the following five elements: (1) the defendant falls within one of the four categories of "responsible parties" enumerated in § 107(a); (2) the site of the clean-up is a facility under § 101(9); (3) there is a release or threatened release of hazardous substances at the facility; (4) as a result of which plaintiff has incurred response costs; and (5) the costs incurred conform to the national contingency plan ("NCP") under § 107(a)(4) as administered by the EPA. *See U.S. v. Alcan Aluminum Corp.,* 990 F.2d 711, 719–20 (2d Cir.1993) (citing *B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192, 1198 (2d Cir.1992)). Under § 107(a), a "responsible party" includes: "(1)

the owner and operator of a vessel or a facility ..." 42 U.S.C. § 9607(a)(1).

Under the Third–Party Defense set forth in CERCLA § 107(b)(3), a defendant owner is not liable if it establishes that the release or threatened release was caused solely by:

> (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant ... if the defendant establishes by a preponderance of the evidence that (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result for such acts or omissions.

42 U.S.C. § 9607(b)(3).

▇ DOT argues that the Third–Party Defense is available to it because the release of hazardous substances was caused solely by an act or omission of the Town and the industrial generator defendants, parties to whom DOT is not contractually or otherwise related. DOT further argues that, upon discovering the encroachment when the Town notified it in 1992, it exercised due care with respect to any hazardous substances concerned and took precautions against foreseeable acts of the Town and industrial generator defendants in light of all relevant facts and circumstances.[1]

---

1.  DOT specifically argues that there is no dispute that DOT acquired the property in 1982, years after the landfill had ceased operating, and that the Town notified DOT of the landfill's encroachment on its property in 1992, after the Town had completed its Remedial Investigation/Feasibility Study, which determined the nature and extent of the contamination and the remedies to correct the conditions. DOT further argues that the correspondence between it and the Town, DEC and the Air National Guard establish that it cooperated with the Town and DEC to determine how best to ensure that any problems associated with the encroachment could be corrected. The Town excavated the material that had been dumped onto the property as part of the construction of

the final remediation of the landfill in November and December 1992. *See* Hernan Declaration, Exhibit B.

Relying on the deposition testimony of William Steene, a lieutenant colonel with the Air National Guard at the Airport property, third-party plaintiffs argue that there is evidence that DOT discovered the encroachment in 1983–84. Stecne testified that in 1983 he took a crew of engineers to the area of encroachment to conduct soil boring investigations and perform topographic surveys and ultimately a property line survey.

Steene also testified, however, that at that time there was no way of knowing whether the landfill was on the property, because there were no

DOT asserts that the Third Party Defense duties of due care and precaution do not arise until after a defendant has discovered the pollution or the possibility of pollution. For example, in *Lincoln Properties, Ltd. v. Higgins,* 823 F.Supp. 1528 (E.D.Cal.1992), the owner of property contaminated by toxic dry cleaning substances brought an action for contribution against the County, arguing that, as an owner of the sewers and wells, it was a responsible party. The court held that the Third–Party Defense was available to the County because there was no contractual relationship between it and a third party who caused the release, and because it exercised due care by inspecting and sealing the wells and sewer lines upon discovering the contamination. *See Lincoln Properties,* 823 F.Supp. at 1543–44.

In *HRW Systems, Inc. v. Washington Gas Light Co.,* 823 F.Supp. 318, (D.Md.1993), HRW owned contaminated property. The court held, however, that HRW was entitled to the Third–Party Defense because it had no contractual relationship with Washington Gas and because it exercised due care after it discovered the hazardous substances. Washington Gas specifically argued that the Third–Party Defense was not available because HRW had not investigated the property at the time of purchase. The court rejected that argument:

> [t]he statute clearly does not contemplate a party taking due care and precautions prior to the discovery of any hazardous substances or knowledge of the possibility of pollution. Nor does the language of this section of the statute impose a duty on a purchaser of land to investigate prior to

purchase, in order to determine whether there is pollution on the land caused by someone with whom the purchaser is not in contractual privity. Rather, the statute requires the owner of property to exercise due care with respect to the hazardous substance concerned, and to take precautions against the foreseeable acts or omissions of a third party.

*HRW,* 823 F.Supp. at 349. The court concluded that "[a]ll that the statute requires here is that a land owner who has knowledge of the possibility of pollution through the acts or omissions of a third party should exercise due care, and taken appropriate precautions, in order to insure that no pollution occurs." *HRW,* 823 F.Supp. at 349.

In opposition, third-party plaintiffs argue that DOT did not exercise "due care" because it failed to discover the patent encroachment until the Town notified it ten years after it had acquired the property. Third-party plaintiffs cite *United States v. Serafini,* 791 F.Supp. 107 (M.D.Pa.1990), *Chatham Steel Corp. v. Brown,* 858 F.Supp. 1130 (N.D.Fla.1994) and *United States v. A & N Cleaners and Launderers,* 854 F.Supp. 229 (S.D.N.Y.1994) in support of their argument that the Third–Party Defense is not available to DOT because it did nothing to discover the hazardous condition. None of these cases, however, supports third-party plaintiffs' proposition that DOT was required to take reasonable steps to discover the presence of hazardous substances on its property in order to establish its Third–Party Defense.

*Serafini* is inapplicable because it construed the Innocent Landowner Defense under § 101(35)(B).[2] Because there is no allegation, nor evidence, that DOT is con-

physical boundaries to show where the corner was. Moreover, Steene was an employee of the United States and was represented at his deposition by counsel for third-party defendant, the United States of America. Third-party plaintiffs have not cited any authority for the proposition that what Steene knew or did not know, on behalf of the United States, a leasee of DOT, is attributable to DOT.

**2.** The Innocent Landowner Defense is a special case of the Third–Party Defense. In 1986 Congress created an exception to the "no contractual relationship" requirement of the Third–Party Defense, thereby making it available to some owners who acquired the relevant property after the

disposal or placement of hazardous substances occurred. CERCLA § 101(35)(A) defines "contractual relationship" for purposes of CERCLA § 107(b)(3) as including "land contracts, deeds or other instruments transferring title or possession," unless:

> the real property on which the facility concerned is located was acquired by the defendant after the disposal or placement of the hazardous substance on, in, or at the facility and.... [a]t the time the defendant acquired the facility the defendant did not know and had no reason to know that any hazardous substance which is the subject of the release or threatened release was disposed of on, in, or at the facility.

tractually related to any third party who caused the release or threatened release, DOT need not meet the requirements of the Innocent Landowner Defense in order to establish its Third–Party Defense.

In *Chatham*, the court held that the Third Party Defense was not available to the defendant scrap metal dealer because it had a contractual relationship with the third party who had caused the release of hazardous substances, and the release of such substances was "in connection with" the contractual relationship. Specifically, the defendant had sold its spent batteries to the third-party battery recycler, who discarded the castings causing lead and acid to be released into the environment. The court further held that the defendant did not meet the Precautionary Requirement of the Third–Party Defense because, given that the batteries were to be recycled, it was foreseeable that after recovering lead from the batteries, the third-party would have to dispose of the battery casings. *Chatham*, 858 F.Supp. at 1154–55.

Here, again there is no allegation or evidence of a contractual relationship between DOT and a party who caused the release. In addition, third-party plaintiffs have not alleged that DOT had knowledge of the possibility of pollution, as the defendant in *Chatham* did, but failed to take precautionary measures against foreseeable acts of responsible third parties.

Finally, in *A & N Cleaners*, the court held that the current owners of property on which hazardous substances were located failed to satisfy the Due Care Requirement of the Third–Party Defense because after receiving information regarding investigations into contamination, and information of contamination, they did not inquire of the third party or any relevant environmental officials regarding the third party's disposal practices. *A & N Cleaners*, 854 F.Supp. at 243–44.

It was in this context—where defendants knew of the investigation into contamination and even of the contamination—that *A & N Cleaners* concluded, in the language relied upon by third-party plaintiffs, that "[i]t is no defense to insist that, in the course of its ongoing testing, the Government should have notified the.... Defendants that there was a problem on the Property, since Congress has seen fit to shift the public responsibility of locating contamination onto the shoulders of individual property owners." *A & N Cleaners*, 854 F.Supp. at 244.

Here, when DOT was notified of the encroachment, the Town had already investigated and begun to remediate the Site, under the supervision of the DEC. DOT reviewed the Town's remedial plan and assisted the Town in acquiring an easement from the Air National Guard to remove landfill materials from its leasehold. The encroachment was removed before the end of the year. Third-party plaintiffs have not provided any evidence that, after being notified of the encroachment, DOT could or should have taken any other steps with respect to the hazardous substances concerned. Accordingly, DOT's motion for summary judgment is granted on the ground that there is no genuine issue of material fact as to the availability of the Third Party Defense. This Court need not reach the question of whether DOT is an "owner."

SO ORDERED.

---

42 U.S.C. § 9601(35)(A).

To qualify as an Innocent Landowner under CERCLA § 101(35)(A), one must have undertaken "all appropriate inquiry into the previous ownership and uses of the property, consistent with good commercial or customary practice" at the time of transfer. 42 U.S.C. § 9601(35)(B). In deciding whether a defendant has complied with this standard, courts consider any specialized knowledge or expertise the defendant has, whether the purchase price indicated awareness of the presence of a risk or contamination, commonly known or reasonable information about the property, the obviousness of the presence of contamination at the property, and the ability to detect such contamination by appropriate inspection. 42 U.S.C. § 9601(35)(B).

Landowners who meet the requirements of CERCLA § 101(35)(A) will not be found to be in a "contractual relationship" with the party responsible for the release of hazardous substances at the property. To obtain the protection of the Innocent Landowner Defense, they must also meet the Due Care and Precautionary Requirements of the Third–Party Defense. 42 U.S.C. § 9601(35)(A). *See A & N Cleaners*, 854 F.Supp. at 237–38.