**The TOWN OF NEW WINDSOR and the State of New York, Plaintiffs,**

v.

**TESA TUCK, INC., Lightron Corporation, Inc., Eugene Littman, Harry Basch, Mearl Corporation, and Kollmorgen Instruments Corporation, Defendants.**

**TESA TUCK, INC. and Lightron Corporation, Inc., Third–Party Plaintiffs,**

v.

**The UNITED STATES of America, James S. Patsalos, James S. O'Neill, Charles T. Kavanagh, Cornell Group Service Corp., the New York State Department of Transportation, City of Newburgh, and the New York State Thruway Authority, Third–Party Defendants.**

**No. 92 CV 8754.**

United States District Court, S.D. New York.

July 17, 1996.

Kimberly Shaw Rea, Bleakley Platt & Schmidt, White Plains, NY, for Plaintiffs.

Nicholas Z. Hegedus, Kiefferr and Hahn, New York City, for Defendant, Third–Party Plaintiff and Cross Claimaint Tesa Tuck.

Robert Emmet Hernan, Asst. Attys. Gen., N.Y.S. Department of Law Environmental Protection Bureau, New York City, for Third–Party Defendants N.Y.S. Thruway Authority, the N.Y.S. Dept. of Transportation and the State of New York.

Edwin Eisen, Eisen, Herschcopf & Schulman, New York City, for Third–Party Defendant Mearl Corporation.

Donna Frosco, Keane & Beane, White Plains, NY, for Defendant and Third–Party Plaintiff Lightron Corporation.

Gideon A. Schor, Asst. U.S. Atty., New York City, for Third–Party Defendant United States of America.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

### FACTS

This action under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et*

*seq.*, as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), P.L. 99–499 (October 17, 1986), and state law is before this Court on the motion of third-party defendant, the New York State Thruway Authority, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Familiarity with the facts and this Court's prior decision of March 14, 1996 is assumed. Third-party plaintiffs have asserted CERCLA § 113(f) claims for contribution against the Authority, based upon the Authority's ownership of property adjacent to the New Windsor landfill, on which the landfill encroached, and upon the Authority's generation of hazardous substances that it arranged to have disposed of at the landfill.

The Authority now moves for summary judgment on the grounds that third-party plaintiffs cannot establish that it is a "responsible party" under (1) § 107(a)(2), because there is no evidence that hazardous substances encroached upon the Authority's property, and even if there were hazardous substances, the Authority exercised "due care" with respect to them; (2) § 107(a)(3), because there is no evidence that the Authority "arranged" to have "hazardous substances" disposed of at the landfill, and even if it did, CERCLA's "tailpipe emission exemption" and "petroleum exclusion" preclude a finding of liability; and (3) § 107(a)(1), because the Authority's property is not a facility.

## DISCUSSION

### 1. *Legal Standard*

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court's responsibility is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *McNeil v. Aguilos,* 831 F.Supp. 1079, 1082 (S.D.N.Y.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)); *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See *McNeil,* 831 F.Supp. at 1082 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam) (other citations omitted)). *See also Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991) (citations omitted).

Liability under CERCLA is imposed where a plaintiff establishes the following five elements: (1) the defendant falls within one of the four categories of "responsible parties" enumerated in § 107(a); (2) the site of the clean-up is a facility under § 101(9); (3) there is a release or threatened release of hazardous substances at the facility; (4) as a result of which plaintiff has incurred response costs; and (5) the costs incurred conform to the national contingency plan ("NCP") under § 107(a)(4) as administered by the EPA. See *U.S. v. Alcan Aluminum Corp.,* 990 F.2d 711, 719–720 (2d Cir.1993) (citing *B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192, 1198 (2d Cir.1992)).

Under § 107(a), a "responsible party" includes:

(1) the owner . . . of a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment . . . of hazardous substances owned or possessed by such person, by any other party or entity, at any facility . . . owned or operated by another party or entity and containing such hazardous substances . . .

42 U.S.C. § 9607(a).

2. *Whether the Authority may be liable as a person who at the time of disposal of a hazardous substance owned or operated any facility at which such hazardous substances were disposed of under § 107(a)(2)*

■ While there is some very thin evidence that the Thruway may be a source of hazardous substances at the landfill,[1] there is no evidence that hazardous substances were disposed of on the Authority's property. No soil or sediment samples were taken from the Authority's property. *See* Exhibit B, Samuelian Deposition, p. 314. No samples of runoff or sheet flow were taken from the Authority's property. *See* Exhibit B, Samuelian Deposition, p. 315, 317, 324. In fact, no samples of any kind were taken from the Authority's property. *See* Exhibit B, Samuelian Deposition, p. 315. While drums were found on and removed from an excavation area (Excavation Area 3) that included property owned by the Authority (Excavation Area 3C), none of the drums were found on or excavated from the Authority's property. *See* Exhibit C, Miller Deposition, p. 40–42, attached exhibits 2–4. Because there is no evidence that hazardous substances were disposed of on property owned by the Authority, third-party plaintiffs cannot establish that it is a "responsible party" under § 107(a)(2). *See, e.g., Dana Corp. v. American Standard, Inc.,* 866 F.Supp. 1481, 1490–91 (N.D.Ind.1994).

Because there is no genuine issue of material fact as to whether hazardous substances were disposed of on the Authority's property, this Court need not reach the issue of whether the Authority exercised "due care" with respect to the hazardous substance and took precautions against foreseeable acts or omissions of the third party that caused the release or threat of release.

3. *Whether the Authority may be liable as a person who arranged for disposal of its hazardous substances at the landfill under § 107(a)(3)*

A "responsible party" under CERCLA includes "any person who ... arranged for disposal ... of hazardous substances owned or possessed by such person, by any other party or entity, at any facility ... owned or operated by another party or entity and containing such hazardous substances ..." 42 U.S.C. § 9607(a)(3). The Authority argues that there is no evidence that it "arranged for" the disposal of hazardous substances.

CERCLA does not define the words "arranged for." Courts, however, have interpreted them to imply intentional action. *See, e.g., United States v. Cello–Foil Products, Inc.,* 848 F.Supp. 1352, 1357–58 (W.D.Mich. 1994) ("That Defendants incidentally got rid of [residual amounts of hazardous substances remaining in drums] does not mean that it was Defendants' purposeful intent to dispose of the residues; rather, this was merely inci-

---

1. The Remedial Investigation prepared by the Town's consultant, John Samuelian of EA Engineering, P.C., states:

The analytical results indicate that some of the volatile organic compounds in the ambient air could be attributed to site contamination. However, the proximity of the New York State Thruway suggests a contribution of BTEX compounds from that source. Although benzene and toluene were identified in the soil vapor samples at the site, the adjacent New York State Thruway is likely contributing a greater portion of the ambient air relative to the benzene flux through the existing soil cover. (RI/FS at 4–3.)

PAHs can be derived from several sources, including surface road runoff and deposition of combustion products from the air.... The fact that the PAHs were found in only the two shallow soil samples located in areas adjacent to roadways (NW–6 [the New york State Thruway] and NW–1 [Square Hill Road]), it ap-

pears that presence of these compounds is associated with runoff and deposition from the roadways and not entirely attributable to leaching from the site. (RI at 4–10.)

The elevated chloride concentrations at SW–1 and SW–6 may be attributable to road surface salt runoff from the New York State Thruway and Stewart Air Base, respectively. (RI at 4–22.)

PAHs can be derived from several sources including surface road runoff and deposition of combustion products in the air. Therefore, some of the PAHs present in sediments may be arriving from the runoff and deposition from the adjacent New York State Thruway. (RI at 4–30, 31.)

The elevated lead concentrations may be related to automobile emissions from traffic on the New York State Thruway. (RI at 4–37.)

However, the proximity of the New York State Thruway suggests some contribution of BTEX from this source. (RI at 4–37.)

dental to the drum return."); *United States v. Iron Mountain Mines, Inc.,* 881 F.Supp. 1432, 1451 (E.D.Cal.1995) ("No court has imposed arranger liability on a party who never owned or possessed, and never had any authority to control or duty to dispose of, the hazardous materials at issue.").

For example, in *General Electric Co. v. AAMCO Transmissions, Inc.,* 962 F.2d 281 (2d Cir.1992), oil companies that had no obligation to exercise control over the manner in which their dealers disposed of waste motor oil were not liable as arrangers under CERCLA. The Court held that "[a]lthough arranger liability can attach to parties that do not have active involvement regarding the timing, manner or location of disposal, there must be some nexus between the potentially responsible party and the disposal of the hazardous substance." *General Electric,* 962 F.2d at 286 (internal quotation and citation omitted). The Court noted that almost all courts holding defendants liable as arrangers have found that the defendant had some actual involvement in the decision to dispose of waste, and that the few courts that held an entity responsible as an arranger in the absence of actual involvement have found that nexus between the potentially liable party and the disposal of hazardous substances to be some obligation to arrange for or direct their disposal. *See General Electric,* 962 F.2d at 286.

In addition, *Amcast Industrial Corp. v. Detrex Corp.,* 2 F.3d 746, 751 (7th Cir.1993), *cert. denied,* 510 U.S. 1044, 114 S.Ct. 691, 126 L.Ed.2d 658 (1994), distinguished between the spilling of hazardous substances that occurs en route to disposal and the spilling of hazardous substances that occurs en route to delivery. A person who hires a transport company to carry hazardous substances to a disposal site would be liable as a "arranger" for a spill that occurred en route because "disposal" includes accidental spillage, but a person who hired a transport company to deliver a hazardous substance to another entity for use would not be liable as a "arranger" for a spill that occurred en route because that person did not "arrange for" the accidental disposal; rather, he arranged for delivery. *Amcast,* 2 F.3d at 751.

■ Here, there is no evidence that the Authority had any obligation to exercise control over the disposal of hazardous substances emanating from vehicles travelling along the Thruway, or that it had active involvement in disposing of any hazardous substances. In fact, the third-party plaintiffs have not opposed this argument. Accordingly, the Authority is not a responsible party under § 107(a)(3).

Because this Court concludes that the Authority did not "arrange for" the disposal of hazardous waste, it need not reach the issues of whether CERCLA's "tailpipe emission exemption" and "petroleum exclusion" preclude a finding of liability.

4. *Whether the Authority is liable as an owner of a facility under § 107(a)(1)*

■ Finally, third-party plaintiffs have not submitted any evidence tending to show that the Authority is liable as an owner or operator of a facility. CERCLA defines "facility" as "... any landfill ..., or any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located ..." 42 U.S.C. § 9601(9). As discussed above, there is no evidence that hazardous substances were deposited, stored, disposed of, placed, or otherwise located on the Authority's property.

In conclusion, the Authority's motion for summary judgment is granted.

SO ORDERED.