Wallace Robinson appeals from the trial court's order granting a motion to dismiss filed by Daniel Benton. We affirm.
On March 22, 2001, Robinson filed a complaint against Benton. That complaint stated:
 "1. The Plaintiff, Wallace E. Robinson, is a resident of Baldwin County, Alabama and is the natural child of Dorothy S. Postle, deceased.
 "2. The Defendant, Daniel A. Benton, is a resident citizen of Baldwin County, Alabama and is an attorney licensed by the State of Alabama with his principal place of business located in Fairhope, Alabama.
 "3. This is a legal service liability action pursuant to Ala. Code § 6-5-570, et al.
 "4. In 1991, Dorothy S. Postle . . . requested that the Defendant Benton prepare a Will according to her *Page 632 
instructions. Benton prepared said Will and on or about April 4, 1991, Postle signed the instrument and Benton delivered it to her for keeping with her important personal papers.
 "5. After the death of her husband, Frederick O. Postle, on February 5, 1999, Dorothy S. Postle . . . met with Benton in his office and delivered to him the original of the April 4, 1991, Will. During that meeting with Benton, Dorothy S. Postle . . . instructed him as her attorney to destroy the existing Will and [to] prepare another Will at that time. Further, Dorothy S. Postle . . . expressly informed Benton as her attorney that she wanted to exclude Barbara Brown and Louis Fred Postle, from her new Will. Benton took notes of said meeting with Dorothy S. Postle . . . and in his notes referenced the instructions to `destroy old Will,' meaning the Will of April 4, 1991. During that meeting Benton and Dorothy S. Postle . . . discussed some of the changes Postle wanted to make in her new Will which Benton was to prepare.
 "6. Subsequently Dorothy S. Postle suffered from declining health and never had another appointment with Benton. Notwithstanding Dorothy S. Postle's instructions to destroy the existing Will, Benton failed to destroy the April 4, 1991, Will as instructed by his client. Moreover, following the death of Dorothy S. Postle, Benton was contacted by Daniel K. Bankester, who at that time was a practicing attorney in Baldwin County, who purported to represent Rita Postle. Benton informed Daniel T. Bankester that he had possession of the April 4, 1991, Will which Dorothy S. Postle . . . had delivered to him expressly for the purpose of revoking and destroying it.
 "7. Rita Postle then filed for probate the April 4, 1991, Will of Dorothy S. Postle, deceased, . . . in the Probate Court of Baldwin County, Alabama and received the Letters Testamentary for the estate of Dorothy S. Postle.
 "8. Benton not only failed to destroy the April 4, 1991, instrument, but further failed to disclose to Dorothy S. Postle . . . that he had not destroyed said instrument. At all relevant and material times, Benton served as a fiduciary for Dorothy S. Postle . . . as her attorney and, as such, Benton's failure as a fiduciary to disclose that he had not destroyed the April 4, 1991, Will constitutes a suppression of material fact within the meaning of Ala. Code § 6-5-102.
 "9. If the April 4, 1991, Will offered for probate had been destroyed as Dorothy S. Postle . . . instructed her attorney Benton, Dorothy S. Postle would have died intestate and her sole heirs at law would have been the Plaintiff and a sibling. As a result of Benton's failure and breach of duty, the Plaintiff has suffered damages inasmuch as the residual estate will be divided into four (4) equal shares pursuant to the terms of said instrument and not divided in two (2) equal shares as it would have been divided under the laws of intestate succession.
 "10. The Defendant Benton owed a standard of care to Dorothy S. Postle . . . in the handling of the estate matter discussed herein. Benton owed Dorothy S. Postle . . . that level of reasonable care, skill and diligence as other similarly situated legal service providers in the same general line of practice in this area have and exercise in a like case. The Plaintiff, as natural children [sic] of Dorothy S. Postle, would have been the sole heirs [sic] at law of their [sic] mother's estate had Benton not breached his duty to Dorothy S. Postle . . . . By failing to destroy the April 4, 1991, [Will] as instructed by Dorothy S. Postle . . . and *Page 633 
by [failing] to disclose to his client that he did not destroy said Will, Benton has caused Barbara Brown and Louis Fred Postle to benefit from monies and assets in the Estate of Dorothy S. Postle . . . to which they would not have been entitled under the laws of intestate succession. Hence, Benton's failure to destroy the April 4, 1991, Will and failure to disclose to his client that [he] did not destroy said Will has caused damages to the Plaintiff as alleged herein.
 "11. Benton's breach of his duty of care to Dorothy S. Postle . . . the mother of [the] Plaintiff[,] has proximately caused the Plaintiff to suffer damages."
On May 11, 2001, Benton filed a motion to strike certain allegations in Robinson's complaint and to dismiss; his motion stated:
 "Comes now the defendant, Daniel A. Benton and moves the Court, separately and severally as follows:
 "1. To strike the allegations contained in paragraph 8 of the complaint, on the ground that a `legal service liability action' is an exclusive remedy. Ala. Code § 6-5-573 (1975).
 "2. To dismiss the action, on the ground that plaintiff lacks standing and the complaint therefore fails to state a claim against defendant upon which relief can be granted. Peterson v. Anderson, 719 So.2d 216
(Ala.Civ.App. 1997), cert. denied, (Ala. 1998)."
On August 21, 2001, the trial court conducted a hearing on Benton's motion to strike and to dismiss.
On August 23, 2001, Robinson filed an affidavit by Benton that had been filed in Dorothy Postle's estate proceedings, accompanied with a notice of filing stating that the affidavit had been read to the trial court during the August 21 hearing. Benton's affidavit, having been sworn to on September 20, 1999, stated:
 "I am an attorney authorized and licensed to practice law in the State of Alabama. Dorothy S. Postle was a client of mine for a number of years. In 1991, Ms. Postle asked me to prepare a will according to her instructions. I did so, and such will was signed by her on April 4, 1991, and delivered to her for keeping with her important personal papers. I did not see that will again until Ms. Postle brought it to me after the death of her husband, Frederick O. Postle. I saw Ms. Postle on February 5, 1999, in my office, at which time she delivered to me the original of the April 4, 1991, will. At the time of my meeting with her, she said she wanted both her will destroyed and it to be replaced with a new one but that she wanted `Fred's kids to get nothing.' My notes of my meeting with her on that day include a reference to `destroy old will,' referring to the will of April 4, 1991. We discussed some of the changes she wanted to make in her new will but she wanted to think about some others. Her declining health intervened, and she never had another appointment with me. I failed to destroy the April 4, 1991, will that had been delivered to me expressly for the purpose of revoking it, and that I was prepared so to testify."
On August 27, 2001, the trial court entered an order granting Benton's motion to strike and to dismiss. Robinson filed a notice of appeal to this Court on October 9, 2001.
On appeal, Robinson asserts in his brief to this Court as follows:
 "Robinson argues that the law concerning an attorney's duty to third party beneficiaries in cases like this one should be changed to reflect the public policy upheld by the majority of States, and further argues that his claim falls *Page 634 
outside of the Alabama Legal Liability Act found in Ala. Code § 6-5-570, et seq., without any change in Alabama law."
In arguing for a change of law, Robinson recognizes that "[u]nder current Alabama law an intended beneficiary cannot bring a civil action against the attorney unless the duty arises from a gratuitous undertaking by the attorney." (Appellant's brief at 11, citing Peterson v. Anderson,719 So.2d 216 (Ala.Civ.App. 1997), and Shows v. NCNB Nat'l Bank of NorthCarolina, 585 So.2d 880 (Ala. 1991)).
While the trial court granted what Benton had styled as a motion to strike and to dismiss, the record shows that, in addition to the pleadings, Robinson filed with the trial court Benton's affidavit in the estate proceeding, and the trial court considered the affidavit before entering the dismissal. Thus, his motion to strike and dismiss was converted to a motion for a summary judgment and our standard of review is not the standard applicable to a grant of a motion to dismiss, but rather the standard of review applicable to a summary judgment.
 "When matters outside the pleadings are considered on a motion to dismiss, the motion is converted into a motion for summary judgment, Rule 12(b), Ala.R.Civ.P.; this is the case regardless of what the motion has been called or how it was treated by the trial court, Papastefan v. B L Constr. Co., 356 So.2d 158 (Ala. 1978); Thorne v. Odom, 349 So.2d 1126
(Ala. 1977). `Once matters outside the pleadings are considered, the requirements of Rule 56, [Ala.R.Civ.P.], become operable and the "moving party's burden changes and he is obliged to demonstrate that there exists no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law." C. Wright A. Miller, Federal Practice Procedure, Civil, § 1366 at 681 (1969).' Boles v. Blackstock, 484 So.2d 1077, 1079 (Ala. 1986)."
Hornsby v. Sessions, 703 So.2d 932, 937-38 (Ala. 1997).
There being no genuine issue as to any material fact presented in this case, and given the current state of the law, Benton would be entitled to a judgment as a matter of law. The cases from both this Court and the Court of Civil Appeals referenced by Robinson in his brief to this Court — Shows, supra, and Peterson, supra — stand for the proposition that an intended beneficiary has no standing to bring a legal-malpractice action against an attorney because there is no privity between the beneficiary and attorney, and in the absence of privity, the attorney owes no duty to the beneficiary.
In Shows, supra, one of the Showses' claims was that an attorney had negligently prepared a deed of conveyance between NCNB National Bank of North Carolina and third parties who had purchased at a foreclosure sale real estate that had been owned by the Showses before they defaulted on a promissory note. In regard to the Showses' legal-malpractice claim, this Court stated:
 "In order to recover damages for legal malpractice, a plaintiff must prove the same elements that must be proven in a negligence action:
 "`"To recover, the [plaintiff] must prove a duty, a breach of the duty, that the breach was the proximate cause of the injury, and damages." Herston v. Whitesell, 348 So.2d 1054, 1057 (Ala. 1977). (Citations omitted.) "A claim for malpractice requires a showing that in the absence of the alleged negligence the outcome of the case would have been different." Hall v. Thomas, 456 So.2d 67, 68 (Ala. 1984). (Citations omitted.)' *Page 635 
"Moseley v. Lewis Brackin, 533 So.2d 513 (Ala. 1988).
 "[The attorney] argues that he owed no duty to the Showses. A person authorized to practice law owes no duty except that arising from contract or from a gratuitous undertaking. Williams v. Jackson Co., 359 So.2d 798 (Ala.Civ.App.), cert. denied, 359 So.2d 801
(Ala. 1978). In support of his argument, [the attorney] notes that he filed an affidavit with the trial court in which he stated that at no time did he directly or indirectly represent the Showses. The Showses did not present any evidence to the contrary. Therefore, we hold that the trial court's judgment [on the pleadings] was also proper as to [the attorney]."
585 So.2d at 882 (emphasis added).
In Peterson, supra, residual beneficiaries under a will filed an amended complaint that included a claim that an attorney had breached his fiduciary duties to the decedent. The attorney filed a motion to dismiss; the trial court granted the motion. The Court of Civil Appeals affirmed the trial court's order of dismissal, stating:
 "The Petersons argue that their claim against [the attorney], which falls under the Legal Service Liability Act, Ala. Code 1975, § 6-5-570 through § 6-5-581, should not have been dismissed. [The attorney] argues that the Petersons, as nonclients, have no standing to maintain a legal service liability action against him.
 "The Legal Service Liability Act consolidates all actions against all legal service providers into one action, known as a `legal service liability action.' Ala. Code 1975, § 6-5-573. That action is defined as:
 "`Any action against a legal service provider in which it is alleged that some injury or damage was caused in whole or in part by the legal service provider's violation of the standard of care applicable to a legal service provider. A legal service liability action embraces all claims for injuries or damages or wrongful death whether in contract or in tort and whether based on an intentional or unintentional act or omission.'
 "Ala. Code 1975, § 6-5-572(1). Therefore, the Petersons' action against [the attorney] is a legal service liability action.
 "In support of his contention that the Petersons have no standing to pursue a legal service liability action against him, [the attorney] cites Shows v. NCNB National Bank of North Carolina, 585 So.2d 880 (Ala. 1991). In Shows, the plaintiffs alleged that an attorney had committed malpractice by drawing up a deed of conveyance between the bank and the purchasers who bought the plaintiffs' property at a foreclosure sale. Shows, 585 So.2d at 882. The attorney argued in his motion to dismiss that he owed no duty to the plaintiffs because he did not represent them at any time. Id. The trial court agreed, and it granted his motion to dismiss. Id. The Supreme Court affirmed, stating that `A person authorized to practice law owes no duty except that arising from contract or from a gratuitous undertaking.' Id.
 "The Petersons argue that the statement in Shows can be traced back to an opinion rendered by this court, which gave no citation of authority for the proposition. See Williams v. Jackson Co., 359 So.2d 798
(Ala.Civ.App.), cert. denied, 359 So.2d 801 (Ala. 1978). Therefore, the Petersons argue, the statement is dictum and cannot be considered authoritative. We do not believe that the statement, which has been *Page 636 
adopted by the Supreme Court, is merely dictum. The law in Alabama is that `A person authorized to practice law owes no duty except that arising from contract or from a gratuitous undertaking.' Shows, 585 So.2d at 882. Accordingly, the Petersons have no standing to maintain a legal service liability action against [the attorney]."
719 So.2d at 218-19.
In arguing that Alabama law should be changed to grant a third-party beneficiary standing to sue an attorney who has allegedly committed legal malpractice through services provided to a decedent, Robinson presents a survey of several jurisdictions that allow beneficiaries to bring malpractice claims under similar circumstances.[1] Benton responds by arguing that Alabama law should not depart from the rule disallowing attorneys to be sued for legal malpractice absent the existence of a contract or the attorney's performing a gratuitous undertaking, i.e., the rule stated in Shows, supra, and Peterson, supra. In making this argument, Benton cites caselaw from jurisdictions that require the claimant to be in privity with the attorney in order to have standing to bring a legal-malpractice claim.
In Barcelo v. Elliott, 923 S.W.2d 575 (Tex. 1996), the Supreme Court of Texas, in addressing the issue "whether an attorney who negligently drafts a will or trust agreement owes a duty of care to persons intended to benefit under the will or trust, even though the attorney never represented the intended beneficiaries," id. at 576, set out a thoughtful discussion of the need for the requirement of privity in such cases. That court stated:
 "At common law, an attorney owes a duty of care only to his or her client, not to third parties who may have been damaged by the attorney's negligent representation of the client. Without this `privity barrier,' the rationale goes, clients would lose control over the attorney-client relationship, and attorneys would be subject to almost unlimited liability. Texas courts of appeals have uniformly applied the privity barrier in the estate planning context.
 "Plaintiffs argue, however, that recognizing a limited exception to the privity *Page 637 
barrier as to lawyers who negligently draft a will or trust would not thwart the rule's underlying rationales. They contend that the attorney should owe a duty of care to persons who were specific, intended beneficiaries of the estate plan. We disagree.
 "The majority of other states addressing this issue have relaxed the privity barrier in the estate planning context.
 "While some of these states have allowed a broad cause of action by those claiming to be intended beneficiaries, others have limited the class of plaintiffs to beneficiaries specifically identified in an invalid will or trust. The Supreme Court of Iowa, for example, held that
 "`a cause of action ordinarily will arise only when as a direct result of the lawyer's professional negligence the testator's intent as expressed in the testamentary instruments is frustrated in whole or in part and the beneficiary's interest in the estate is either lost, diminished, or unrealized.'
"Schreiner v. Scoville, 410 N.W.2d 679, 683 (Iowa 1987).
 "We agree with those courts that have rejected a broad cause of action in favor of beneficiaries. These courts have recognized the inevitable problems with disappointed heirs attempting to prove that the defendant-attorney failed to implement the deceased testator's intentions. . . .
". . . .
 "In sum, we are unable to craft a bright-line rule that allows a lawsuit to proceed where alleged malpractice causes a will or trust to fail in a manner that casts no real doubt on the testator's intentions, while prohibiting actions in other situations. We believe that the greater good is served by preserving a bright-line privity rule which denies a cause of action to all beneficiaries whom the attorney did not represent. This will ensure that attorneys may in all cases zealously represent their clients without the threat of suit from third parties compromising that representation."
923 S.W.2d at 577-79 (citations and headings omitted). See also Noble v.Bruce, 349 Md. 730, 709 A.2d 1264 (1998) (holding that the Maryland Supreme Court would continue to apply the strict privity requirement in the will-drafting and estate-planning context and setting out several policy grounds in support of such a requirement); Shriners Hosp. forCrippled Children, Inc. v. Southard, 892 P.2d 417, 418 (Colo.Ct.App. 1994) ("An attorney has a duty to act in the best interests of his or her client and is liable to third parties only for injuries caused by the attorney's fraudulent, malicious, or intentionally tortious conduct.").
We find the reasoning stated in these cases most persuasive. The change Robinson advocates implies the result that "attorneys would be subject to almost unlimited liability." Barcelo, supra, at 577. Accordingly, we decline to change the rule of law in this state that bars an action for legal malpractice against a lawyer by a plaintiff for whom the lawyer has not undertaken a duty, either by contract or gratuitously. Shows, supra, and Peterson, supra. It is to be noted that nowhere in Robinson's complaint did he allege that Postle was aware of the laws of intestate succession and distribution or that she otherwise had an understanding of, and intent as to, who would inherit from her estate if she were to die without following up on her expressed intention of preparing a new will.
Robinson also argues that his negligence claim against Benton falls outside the Legal Service Liability Act, § *Page 638 6-5-570 et. seq., Ala. Code 1975. However, the record shows that this issue was never raised before the trial court. Therefore, we cannot address this issue on appeal. "Our review is limited to the issues that were before the trial court — an issue raised on appeal must have first been presented to and ruled on by the trial court." Norman v.Bozeman, 605 So.2d 1210, 1214 (Ala. 1992) (citation omitted). However, we note that the Legal Service Liability Act encompasses all claims against attorneys into one action. § 6-5-573, Ala. Code 1975; Peterson,supra. Further, Robinson's complaint specifically stated that "[t]his [was] a legal service liability action pursuant to Ala. Code §6-5-570, et al." Accordingly, we do not address this argument further.
For the foregoing reasons, and based on the facts before us, the judgment of the trial court is due to be affirmed.
AFFIRMED.
MOORE, C.J., and SEE, BROWN, and STUART, JJ., concur.
[1] See, e.g., Passell v. Watts, 794 So.2d 651, 652 (Fla.Dist.Ct.App. 2001) ("Intended third-party beneficiaries of testamentary documents have standing to bring an action for legal malpractice if they are able to show that the testator's intent as expressed in the will is frustrated by the negligence of the testator's attorney.") (internal quotation marks and citations omitted); Winters v. Schulman, 977 P.2d 1218, 1225 (Utah Ct.App. 1999) ("In some instances the liability of an attorney to a third party may be recognized on the theory that the attorney's employment constituted a third-party beneficiary contract. The test for third party recovery is whether the parties clearly intended the third party to receive a benefit.") (citations omitted); Desire Narcotics Rehab. Ctr.,Inc. v. White, 732 So.2d 144, 146 (La.Ct.App. 1999) ("[T]he intended legatee under a will is considered a direct, explicit third-party beneficiary of the contract for legal services between the attorney and the testator so that, in the event the will is invalid, the legatee can have a cause of action against the attorney."); Leyba v. Whitley,120 N.M. 768, 773, 907 P.2d 172, 177 (1995) ("Even if an intended third-party beneficiary is not strictly in privity, we join those jurisdictions that have rejected any stringent privity test as the touchstone of an attorney's duty to a nonclient."); Simpson v. Calivas,139 N.H. 1, 5-6, 650 A.2d 318, 322 (1994) ("We agree that although there is no privity between a drafting attorney and an intended beneficiary, the obvious foreseeability of injury to the beneficiary demands an exception to the privity rule."); Auric v. Continental Cas. Co.,111 Wis.2d 507, 509, 331 N.W.2d 325, 327 (1983) ("We conclude that a beneficiary of a will may maintain an action against an attorney who negligently drafted or supervised the execution of the will even though the beneficiary is not in privity with that attorney.").