This appeal presents two questions: (1) Whether the trial court erred in dismissing the plaintiff's claim alleging the tort of outrage; and (2) Whether the trial court erred in finding that the plaintiff's action against the municipal defendants was due to be dismissed because the plaintiff did not file with the City of Mobile a notice of his claim within the time allowed by law.
 Facts and Procedural History
The plaintiff James A. Stabler, Jr., was employed by the City of Mobile as a police officer. His supervisor was the defendant Curtis Robinson, a sergeant with the Mobile Police Department. While he was employed by the City of Mobile in its police department, Stabler applied to the Baldwin County Sheriff's Department for a job as a deputy sheriff. It is undisputed that, on April 28, 1999, Robinson wrote and signed a letter, written on "Mobile Police Department" letterhead, to Chief Larry Milstead, of the Baldwin County Sheriff's Department, in which he stated:
 "Please accept this as a confidential letter of reference regarding an applicant your department is considering hiring as a Deputy Sheriff. This applicant is James Arthur Stabler, Jr. He is currently a member of the Mobile Police Department and I am his immediate supervisor. I have supervised Officer Stabler for 1-1/2 years. During this period I have had the opportunity to rate and observe his job performance. Officer Stabler has a number of weaknesses and I feel obligated to bring them to your attention: First, Officer Stabler has problems following rules, procedures and regulations; he has a record that reflects an abuse of sick time, which kept him off from work on the night shift; he has a rash of citizen complaints filed against him on his demeanor and excessive force and 1 currently pending for investigation. Recently, he was the center of a racial incident with a black officer and disciplinary actions are pending. He also has a problem with truthfulness; and he is not dependable or trustworthy. In addition, I have found his overall job performance to be inept; and he has displayed a bad attitude that reflects prejudicialness [sic] against minorities.
 "In my professional opinion, Officer Stabler is not qualified for the position of Deputy Sheriff and I hope your department considers the above stated facts in making your decision.
"Sincerely,
"/s/ Sgt Curtis Robinson
"Sergeant Curtis Robinson
"Mobile Police Department"
Stabler attached a copy of this letter to his complaint.
The record shows that the Mobile Police Department investigated Robinson's actions in writing the letter and that Robinson was suspended without pay for a period of 10 consecutive workdays. Robinson appealed that ruling to the Mobile County Personnel Board, and in an order dated November 18, 1999, the personnel board found that Robinson had violated police department rules and procedures, but determined that Robinson's discipline was too severe, and reduced his suspension to *Page 557 
three workdays.[1]
On October 22, 1999, Stabler filed a "charge of discrimination" with the Equal Employment Opportunity Commission ("EEOC"). Where asked on the charge-of-discrimination form to name "the employer, labor organization, employment agency, apprenticeship committee, state or local government agency who discriminated against me" he named the City of Mobile, the Mobile Police Department, and Sgt. Curtis Robinson. In his charge of discrimination, he claimed that he "[had] been discriminated against by Sgt. Robinson and the Police Department because of my race and retaliatory action [has] been taken against me."[2] After averring that "[t]he abusive and hostile work environment has been so pervasive, it has altered the conditions of my employment," Stabler stated the following in his charge of discrimination regarding the subject matter of this lawsuit:
 "I had decided to leave the Police Department and applied for a position with the Baldwin County Sheriff's Department, the county in which I reside. That job would have entitled me to more pay, a take home car, better retirement benefits, and generally better working conditions. Based upon my test scores and job performance[,] I should have gotten the position. However, the attached letter of April 28, 1999, written by Sgt. Curtis Robinson on Mobile Police Department letterhead and sent to the Baldwin County Sheriff's Department, caused the opening to be withdrawn. Sgt. Robinson slandered and libeled my reputation. The letter of April 28, 1999, was unfounded, full of inaccuracies and outrageous. There was an investigation as a result of this letter written by Sgt. Robinson and the Police Department has taken little or no action to correct this problem and assure it will not occur in the future. This is not the first such incident involving Sgt. Robinson that has not been addressed or handled by the Department. I have been singled out by Sgt. Robinson, he has solicited complaints against me, and I have been subjected to racial comments and attitudes on an on-going basis. I have been the subject of ridicule, intimidation and insult. The actions of the Police Department and Sgt. Robinson have been devastating to my career and have violated my rights under Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991."
Based upon the foregoing facts, Stabler, on April 13, 2001, sued his supervisor, Sgt. Robinson, the City of Mobile, and the City of Mobile Police Department. In Count I of his complaint, which consisted of three counts, Stabler alleged that the April 28, 1999, letter was written by Robinson in his capacity as Stabler's supervisor and that the letter contained false and defamatory statements. He also alleged that "the Defendants knew, or should have known, of said falsity and/or acted with reckless *Page 558 
disregard of whether or not it was false." He further alleged that "[t]he sending of the letter was malicious, wanton, and/or negligent conduct on the part of the defendants."
Count II of Stabler's complaint alleged the tort of outrage, specifically alleging that "[t]he actions by all Defendants were extreme and outrageous," and that "as a proximate result of the Defendants' outrageous conduct, he ha[d] suffered severe mental anguish, humiliation, damage to [his] reputation, loss of position, and monetary damages and benefits."
Count III of Stabler's complaint alleged that "[a]s an employer, the Defendants, City of Mobile and/or the City of Mobile Police Department, owed a duty to the Plaintiff to adequately supervise and monitor the actions of the Defendant, Curtis Robinson," and that "[t]he Defendants, City of Mobile and/or the City of Mobile Police Department, breached the aforesaid duties owed to the Plaintiff by failing to use reasonable care in adequately supervising and monitoring the actions of the Defendant, Curtis Robinson, all of which resulted in damage to the Plaintiff."
On May 11, 2001, the City of Mobile and the City of Mobile Police Department (hereinafter referred to collectively as "the City defendants") filed a motion to dismiss. In the motion the City defendants alleged that Stabler had failed to comply with the provisions of §§11-47-23 and 11-47-192, Ala. Code 1975, as amended, because he did not file a sworn statement of claim with the City within six months of the injury alleged in the complaint. The City defendants attached to their motion an affidavit by the city clerk, who stated that she was the custodian of "all records contained in the City of Mobile, Alabama Clerk's Office." She stated that the records in her office included all notices of claims submitted to the City of Mobile. She further stated in her affidavit that she had searched for any record showing that Stabler had filed a statement of claim arising out of the incident alleged in this action, and that the only record of the claim she found was the complaint Stabler filed in this case.
Robinson filed an answer to the complaint, which he later amended, and he subsequently filed a motion for a partial summary judgment. In his summary-judgment motion, he alleged (1) that "[a]s to plaintiff's punitive damages claim in Count One (libel), plaintiff failed to comply with the required prerequisites to recovery of punitive damages as mandated by Alabama Code § 6-5-186"; (2) that "[a]s to plaintiff's claim in Count Two (outrage), the allegations made by plaintiff are insufficient as a matter of law to support an outrage claim"; and (3) that "[a]s to plaintiff's claim in Count Three (negligent supervision), the claim is directed at defendants City of Mobile and/or City of Mobile Police Department and Sergeant Robinson for the alleged negligent supervision of Sergeant Robinson," and that "Sergeant Robinson cannot be held liable for negligently supervising himself."
Stabler filed a response to the City defendants' motion to dismiss, in which he acknowledged that the City defendants were basing their motion to dismiss on his failure to comply with the provisions of §§ 11-47-23
and 11-47-192, Ala. Code 1975, the six-month claim statutes. Stabler does not dispute that he did not file a statement of claim as set forth in the statutes, but he states that "in the case of Diemert v. City of Mobile,474 So.2d 663 (Ala. 1985), [this Court] held that the filing of a complaint or lawsuit within six months satisfied the statutory claims requirement." Stabler claimed that his filing of a charge of discrimination with the EEOC on October 22, 1999, was within the *Page 559 
six-month period specified in the statutes and that that filing satisfied the statutory claims requirement.
On February 1, 2002, the trial court, noting that it had heard oral arguments on the City defendants' motion to dismiss and had considered the pleadings, the evidence submitted, and the applicable law, granted the motion. The court, after finding that there was no just reason for delay, made the order of dismissal final pursuant to Rule 54(b), Ala.R.Civ.P.
In the order of dismissal, the trial court amended its previous order entered on November 27, 2001, relating to Robinson's motion for a partial summary judgment and stated, regarding Count I of the complaint: "There is no evidence before the Court of a demand for retraction as required by § 6-5-186, Code of Alabama, for recovery of punitive damages and the claim for punitive damages is dismissed." In entering the partial summary judgment for Robinson, the trial court further stated, relating to Count II, which alleged that Robinson was guilty of the tort of outrage:
 "While the letter in question may have been libelous, the conduct described in the complaint and in the evidentiary submission is not `so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency.' American Road Service v. Inmon, 394 So.2d [361] (Ala. 1980). See, also, Rice v. United Ins. Co. of Am., 465 So.2d [1100] (Ala. 1984)."
The trial judge also stated in his amended order that he had considered "Count Three claiming damages for the alleged negligent failure of Defendant's employer to adequately supervise and monitor [Robinson]," and that he determined that Count III "states no claim against [Robinson] and is dismissed." Stabler appeals from the order dismissing the City defendants and the partial summary judgment for Robinson, naming as the appellees the City of Mobile[3] and Robinson.
 I.
Stabler first argues that the trial court erred in entering a summary judgment for Robinson on Stabler's tort-of-outrage claim. The standard of review this Court applies to a trial court's ruling on a motion for a summary judgment has been frequently stated, most recently in Lacy v.Mini Warehouse World, [Ms. 1010878, May 24, 2002] 835 So.2d 154 (Ala. 2002):
 "`"When reviewing a ruling on a motion for a summary judgment, this Court applies the same standard that the trial court used `in determining whether the evidence before the court made out a genuine issue of material fact.' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988). When a party moving for a summary judgment makes a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). . . . In reviewing a ruling on a motion for a summary judgment, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. *Page 560 Renfro v. Georgia Power Co., 604 So.2d 408, 411
(Ala. 1992)."
 "'City of Orange Beach v. Duggan, 788 So.2d 146, 149
(Ala. 2000).'
 "Watkins v. Board of Managers of Birmingham Ret. Relief Sys., 802 So.2d 190, 193 (Ala. 2001)."
835 So.2d at 156.
Stabler contends that the trial court erred in entering a summary judgment for Robinson because, he says, Robinson presented no evidence in support of the summary-judgment motion on the tort-of-outrage claim. In essence, Stabler argues that Robinson did not establish that there was no genuine issue of material fact and that he was entitled to a judgment as a matter of law as to that claim. Robinson, in his motion for a partial summary judgment stated that "[a]s to plaintiff's claim in Count Two (outrage), the allegations made by the plaintiff are insufficient as a matter of law to support an outrage claim."
Robinson, in his brief to the trial court in support of his motion for a partial summary judgment argued that "[o]nly the most egregious of circumstances will support a claim of outrage," and cited Callens v.Jefferson County Nursing Home, 769 So.2d 273 (Ala. 2000). Robinson renews his argument and relies on Callens to support his position on appeal. In that case, this Court stated:
 "Callens, in her individual capacity, argues that the trial court erred in entering the summary judgment for the defendants on her claim alleging intentional infliction of emotional distress — the tort of outrage. In order to prevail on this claim, Callens must prove (1) that the defendants either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from their conduct; (2) that the defendants' conduct was extreme and outrageous; and (3) that the defendants' conduct caused emotional distress so severe that no reasonable person could be expected to endure it. American Road Serv. Co. v. Inmon, 394 So.2d 361
(Ala. 1980); Jackson v. Alabama Power Co., 630 So.2d 439
(Ala. 1993). This Court has recognized the tort of outrage in three areas: (1) wrongful conduct within the context of family burials; (2) an insurance agent's coercing an insured into settling an insurance claim; and (3) egregious sexual harassment. See Thomas v. BSE Indus. Contractors, Inc., 624 So.2d 1041 (Ala. 1993). This Court has limited the outrage cause of action to egregious circumstances. Although we in no way condone the defendants' alleged conduct, we conclude, after reviewing the evidence in a light most favorable to Callens, that their alleged behavior was not so extreme as to reach the level necessary to constitute the tort of outrage. We affirm the summary judgment as it relates to Callens's tort-of-outrage claim."
769 So.2d at 281.
Stabler, in his response to Robinson's summary-judgment motion, attached his own affidavit, a brief, and a copy of the order of the personnel board, dated November 18, 1999. In that order the board stated that it had "carefully considered all of the material evidence adduced at the hearing including all of the documentary evidence made a matter of record," and concluded, in part, that "Sergeant Robinson's conduct was highly inappropriate in writing the letter to the Baldwin County Sheriff's Department on Police Department stationery," and that "[t]his was clearly in violation of the Police Department Rules, Regulations and Practices."
In its order, the personnel board did find that "Sergeant Robinson's conduct [was] a violation of Section 1.06.05 *Page 561 
concerning criticism of Officer Stabler and of 1.16.02 dealing with revealing confidential information of an officer."[4] The board further found that "[b]y writing a letter on Police Department stationery one could assume this represented the official position of the Mobile Police Department and could place the police department and the Appointing Authority subject to legal liability." The board also found that
 "Sergeant Robinson took it upon himself to write the letter to Chief Larry Milstead of the Baldwin County Sheriff's Department concerning James Arthur Stabler, Jr. and much of the letter specifically and directly criticized Officer Stabler and his work ethic. His letter states that Officer Stabler has a number of weaknesses which he feels obligated to bring to Chief Milstead's attention. He is critical of him in several other areas. He concludes the letter by stating it is his opinion that Officer Stabler is not qualified for the position of Deputy Sheriff in Baldwin County. As was pointed out in the hearing there were a number of inconsistencies and untruths contained in his letter."
After determining that disciplining Sgt. Robinson for writing the letter would not violate Robinson's constitutional right of free speech, the board found that "[a] fair reading of the letter written by Sergeant Robinson leads to the conclusion that the letter was to attack and criticize Officer Stabler" and that "[t]o contend otherwise is simply to defy commonsense in the plain language of the letter."
The board then concluded:
 "It is the opinion of this Board that the Police Department should take appropriate measures to clarify the guidelines and rules so that instances which gave rise to this hearing do not occur in the future. It is the responsibility of police officers to enforce and uphold the law and not to violate it. Police officers are expected to be role models. They should be the epitome of good citizens. This Board challenges Sgt. Robinson to avoid such future action and to strive to become a better officer. To avoid any misunderstanding in the future should Officer Robinson desire to make recommendations concerning fellow officers then this should be done through channels and in accordance with the rules of the department.
 "While the Board finds that the City has met the burden of proof cast upon it, the Board is also of the opinion that the penalty imposed upon this employee is too severe, and believes that the penalty should be modified."
The board also found that
 "the action of suspension heretofore imposed on this employee, Sergeant Curtis Robinson, be, and the same is hereby modified and altered from suspension from active duty without pay for a period of ten (10) consecutive working days, to suspension from active duty without pay for a period of three (3) consecutive working days, and that [Robinson] thereafter receive all back pay and other emoluments of his position for the remainder of his suspension in the amount of seven (7) work days."
The trial judge, in an amended written order,[5] after stating that he had considered *Page 562 
Count II of the complaint, which sought damages for the tort of outrage, stated:
 "While the letter in question may have been libelous, the conduct described in the complaint and in the evidentiary submission is not `so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency.' American Road Service v. Inmon, 394 So.2d [361] (Ala. 1980). See, also, Rice v. United Ins. Co. of Am., 465 So.2d [1100] (Ala. 1984). Judgment is entered for defendant on this claim."
We conclude, as did the trial court, and as this Court concluded inCallens, that Sgt. Robinson's behavior in writing the letter was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." American Road Serv. Co. v. Inmon,394 So.2d 361, 368 (Ala. 1980). In reaching this conclusion, we note that the personnel board, although finding that the purpose of Sgt. Robinson's letter "was to attack and criticize Officer Stabler," nevertheless concluded that "the penalty imposed upon this employee [was] too severe," and modified the suspension from 10 days to 3 days. The board then "challenge[d] Sgt. Robinson to avoid such future action and to strive to become a better officer," and admonished him that "[t]o avoid any misunderstanding in the future should [he] desire to make recommendations concerning fellow officers then this should be done through channels and in accordance with the rules of the department."
The trial judge did not err in entering a summary judgment for Robinson on the tort-of-outrage claim; therefore, we affirm the trial court's judgment on this issue.
 II.
The next issue we address is whether the trial court erred in granting the motion to dismiss filed by the City defendants.[6] Although styled as a motion to dismiss, the motion was accompanied by the affidavit of Glenda Morgan, and Stabler, in his response to the motion, attached a copy of the charge of discrimination he had filed with the EEOC. InRobinson v. Benton, [Ms. 1010167, May 24, 2002] 842 So.2d 631 (Ala. 2002), this Court stated:
 "While the trial court granted what Benton had styled as a motion to strike and to dismiss, the record shows that, in addition to the pleadings, Robinson filed with the trial court Benton's affidavit in the estate proceeding, and the trial court considered the affidavit before entering the dismissal. Thus, his motion to strike and dismiss was converted to a motion for a summary judgment and our standard of review is not the standard applicable to a grant of a motion to dismiss, but rather the standard of review applicable to a summary judgment.
 "`When matters outside the pleadings are considered on a motion to dismiss, the motion is converted into a motion for summary judgment, Rule 12(b), Ala.R.Civ.P.; this is the case regardless of what the motion has been called or how it was treated by the trial court, Papastefan v. B L Constr. Co., 356 So.2d 158 (Ala. 1978); Thorne v. Odom, 349 So.2d 1126 (Ala. 1977). "Once matters outside the pleadings are considered, the *Page 563 
requirements of Rule 56, [Ala.R.Civ.P.], become operable and the `moving party's burden changes and he is obliged to demonstrate that there exists no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law.' C. Wright A. Miller, Federal Practice 
Procedure, Civil, § 1366 at 681 (1969)." Boles v. Blackstock, 484 So.2d 1077, 1079 (Ala. 1986).'
"Hornsby v. Sessions, 703 So.2d 932, 937-38 (Ala. 1997)."
842 So.2d at 634. The appropriate standard of review of the trial court's ruling on the motion to dismiss in this case is the standard used to review a ruling on a motion for a summary judgment. See Lacy v. MiniWarehouse World, supra.
Paragraphs two and six of the City defendants' motion to dismiss state:
 "2. Plaintiff has failed to comply with § 11-47-23
and § 11-47-192, Code of Alabama 1975, as amended, because Plaintiff did not file a sworn statement of claim with the City within six (6) months of the injury alleged in his Complaint, April 28, 1999. As set forth in the Affidavit of City Clerk Glenda Morgan, attached hereto as Exhibit `A,' Plaintiff filed no claim with the office of the City Clerk until the filing of this suit, which was received in her office on April 27, 2001, almost two (2) years thereafter.
". . . .
 "6. These statutes [§§ 11-47-23 and 11-47-192] require dismissal of tort claims against the City and its Police Department, which is a department of the City and not a separate entity."
Section 11-47-23, Ala. Code 1975, provides:
 "All claims against the municipality (except bonds and interest coupons and claims for damages) shall be presented to the clerk for payment within two years from the accrual of said claim or shall be barred. Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred."
Section 11-47-192, Ala. Code 1975, provides:
 "No recovery shall be had against any city or town on a claim for personal injury received, unless a sworn statement be filed with the clerk by the party injured or his personal representative in case of his death stating substantially the manner in which the injury was received, the day and time and the place where the accident occurred and the damages claimed."
On appeal, Stabler argues that "[t]he purpose of making a statutory claim is not to satisfy the niceties of legal pleading but to furnish the City with sufficient physical details of an accident to enable them to investigate the claim and settle with the Claimant if it deems such action appropriate." (Stabler's brief, pp. 13-14.) He argues that the filing of the charge of discrimination with the EEOC served that purpose. Stabler cites, in support of this argument, Cox v. City ofBirmingham, 518 So.2d 1262 (Ala. 1987). He also states that "strict compliance with notice statutes is no longer required under Alabama law," and that the law "now only requires substantial compliance with the statutes," citing Ex parte City of Huntsville, 456 So.2d 72 (Ala. 1984). (Stabler's brief, p. 14.) He contends that the reasoning in Diemert v.City of Mobile, 474 So.2d 663 (Ala. 1985), should apply in this case. InDiemert, this Court stated, "it must be remembered that at the time Cityof Anniston [v. Rosser, 275 Ala. 659, 158 So.2d 99 (1963)] was written, strict compliance with the notice statutes was required. As Ex parte Cityof Huntsville and the cases upon which it *Page 564 
relied show, strict compliance is no longer required." 474 So.2d at 666.
Stabler's primary argument is that he substantially complied with the notice requirements of the statutes when he filed the EEOC charge of discrimination on October 22, 1999, in which he set out the manner in which his injury occurred; the day, the time, and the place the incident occurred; and the damage he suffered. He states in his brief on appeal (1) that the "EEOC Charge of Discrimination was directed against the City Defendants and Defendant Robinson"; (2) that "[t]he Charge of Discrimination . . . was filed within six months of the defamatory letter written by Defendant Robinson in his capacity as an officer for the City Of Mobile Police Department"; (3) that "[f]ollowing the filing of the EEOC claim, mediation between the City Of Mobile Police Department and Plaintiff Stabler was held"; (4) that "[a]ll parties were present at the mediation"; and (5) that "the mediation did not provide resolution of the case" and he subsequently filed this suit. (Stabler's brief, p. 14.) In support of his argument, he cites Diemert, supra, where this Court, overruling Eason v. City of Huntsville, 347 So.2d 1321 (Ala. 1977), andEx parte City of Huntsville, 456 So.2d 72 (Ala. 1984), held that if a suit on a claim against a city is commenced within the six-month period prescribed § 11-47-23, Ala. Code 1975, it is a sufficient presentment of a claim under § 11-47-192, Ala. Code 1975. 474 So.2d at 666. The City defendants, in their brief to this Court, recognize that this Court, in Diemert and its progeny, held that the filing of a lawsuit within six months of the date of a claim's accrual constitutes substantial compliance with the municipal notice-of-claim statutes. The City defendants candidly admit that the decision this Court reached inDiemert "was an eminently logical conclusion in light of those statutes' purposes, and reflected a fair balancing of a claimant's right to pursue his claims without being thwarted by hyper-technical statutory requirements, with the legislature's purposes in creating a statutory scheme allowing for suits against municipalities with certain specified limitations." (City defendants' brief, p. 17.) But the City defendants state that a lawsuit must contain claims for relief in accordance with Rule 8, Ala.R.Civ.P., and must list the claims or causes of action a city must evaluate and either settle or defend. They also argue that the action must be served on a city as provided for in Rule 5, Ala.R.Civ.P., and that "[a]lthough the complaint need not be sworn to and signed by the plaintiff himself, it must be signed by his attorney in accordance with Rule 11 of the Alabama Rules of Civil Procedure." Id. In summary, the City defendants argue that a properly drafted complaint, by its very nature, would provide the same type of information required by the notice-of-claim statutes, and, therefore, constitutes compliance with those statutes if the complaint is filed within the six-month time period, but that the EEOC charge of discrimination "is not the same as a complaint served on a municipality in a state court lawsuit, alleging state law tort claims" and therefore the filing of such a charge does not satisfy the statutes. (City defendants' brief, pp. 17-18.)
Does the filing of an EEOC claim satisfy the requirements of the notice-of-claim statutes? The City defendants state that it does not, and although they admit that they were unable to find any Alabama case directly on point on the issue, they argue that several federal cases, some decided by federal district courts in Alabama, hold that the filing of such a claim does not constitute compliance with a municipal notice-of-claim statute. We have examined the cases they cite and find them to be persuasive. *Page 565 
In Oaks v. City of Fairhope, 515 F. Supp. 1004 (S.D.Ala. 1981), the plaintiff brought claims under Title VII of the Civil Rights Act, giving rise to the assumption that she had previously filed an EEOC charge, which is required before a Title VII claim can be brought in federal court, although this is not made clear in the opinion. In Oaks, the court held that the plaintiff's attempt to join the City of Fairhope in her state-law defamation claim was barred by her failure to comply with the provisions of § 11-47-23. Oaks, 515 F. Supp. at 1049. The Court stated: "Oaks neither filed a claim with the city clerk of Fairhope nor brought an action within six months of the conduct upon which her defamation claim is based," and that Oaks's "failure to timely file either a claim as required by the foregoing statute or a lawsuit means that her defamation claim is barred by the time limitations of Section11-47-23." Id. See also Patrick v. City of Florala, 793 F. Supp. 301
(M.D.Ala. 1992), in which the plaintiff had filed a Title VII claim and was allowed to proceed in federal court on this claim; however, his state-law tort claim for tortious interference with his employment contract was dismissed because he did not file a sworn statement of claim with the municipality within six months. Patrick, 793 F. Supp. at 304.[7]
As was true in Oaks, the opinion in Patrick does not indicate whether the plaintiff claimed that the filing of an EEOC claim constituted substantial compliance with the notice-of-claim statutes, as Stabler claims here.
A federal district court in New York, however, has squarely addressed the issue presented by the facts of this case. In Meckenberg v. New YorkCity Off-Track Betting, 42 F. Supp.2d 359 (S.D.N.Y. 1999), a white female employee sued her employer, New York City Off-Track Betting, alleging gender and race discrimination under Title VII and Tit.42 U.S.C. § 1983; she also included state-law claims alleging outrage and breach of contract. Meckenberg, 42 F. Supp.2d at 384, 385. The court held[8] that the employee's state-law claims *Page 566 
were barred because she had not served her employer, the public gaming entity, with a notice of claim as required by state statutes, which provided that a claimant seeking to maintain an action for damages must file a notice of claim or the claim would be dismissed. Id. The district court held that the notice-of-claim statute "specifies a particular form of notice and manner of service," and that "[t]hese requirements are not satisfied by the inclusion of state claims in either a [New York State Division of Human Rights] complaint or an EEOC charge."42 F. Supp.2d at 384. In Meckenberg, the court cited another federal district court case from New York, McNeil v. Aguilos, 831 F. Supp. 1079 (S.D.N.Y. 1993), which also held that state notice-of-claim requirements were not fulfilled by the filing of an EEOC charge. Id.
In the case before us, the charge of discrimination was filed with EEOC based on allegations of discrimination that occurred, according to what appears on the face of the charge, in "February 1998," for "continuing action." Stabler's action states the date of the accrual of his cause of action as April 28, 1999, the date of Robinson's letter. Although many of the factual allegations attached to Stabler's EEOC charge of discrimination include some of the same allegations made in Stabler's complaint, the charge of discrimination was sent not to the City of Mobile, as was the complaint in Diemert, on which Stabler relies so heavily, but to the EEOC. In fact, we have checked the original record in the Diemert case, see Ex parte City of Dothan Personnel Board, [Ms. No. 1001978, February 1, 2002] 831 So.2d 1 (Ala. 2002), and the record clearly shows that a copy of the summons and complaint that contained a wrongful-death claim on a death that occurred on April 13, 1980, was served on the city clerk on August 1, 1980.[9]
The facts of this case are materially different from those of Diemert. In this case, Stabler's alleged injury occurred on April 28, 1999, and as stated in the affidavit of Glenda Morgan, city clerk for the City of Mobile, Stabler filed no claim with the office of the city clerk until this action was filed, notice of which was received in her office on April 27, 2001, almost two years after the alleged injury occurred.
Whether the filing of an EEOC claim is sufficient to comply with the notice-of-claim statutes apparently has not been addressed in any case by an Alabama court, but we have found some federal district court cases in addition to those cited by the City defendants that address that issue. *Page 567 
Judge Propst, in Fomby v. City of Calera, 575 F. Supp. 221 (N.D.Ala. 1983), quoted from this Court's opinion in Parton v. City of Huntsville,362 So.2d 898 (Ala. 1978), and stated:
 "A brief analysis of Alabama cases does not indicate any reason consistent with federal policy for distinguishing between § 1983 suits against municipalities and other `persons.' In Parton v. City of Huntsville, 362 So.2d 898 (Ala. 1978), the Supreme Court of Alabama stated: `We are constrained to hold that Alabama's statutory scheme is to create liability in limited circumstances, and that the notice requirements of Sections 11-47-23 and -192 are integral parts of that scheme. . . . The limitations upon this right, when uniformly and equally applied are constitutional.' 362 So.2d at 900-901 (emphasis added). Alabama has held that in the absence of statute, its local governments would be absolutely immune from suit. The abolition of municipal immunity in Alabama in Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975), was based upon statutory construction. Eason v. City of Huntsville, 347 So.2d 1321
(Ala. 1977). Under Alabama law, § 11-47-23 is a condition imposed on parties who would otherwise be subject to the defense of immunity. `In short, the Alabama legislature created a conditional right to sue in limited circumstances.' Parton, supra, at 900."
575 F. Supp. at 225.
Although Alabama courts have not required strict compliance with the notice-of-claim statutes, Alabama courts have refused to accept actual knowledge of a potential claim as a substitute for compliance with the notice-of-claim statutes. Large v. City of Birmingham, 547 So.2d 457, 458
(Ala. 1989). There, a firefighter sued the City of Birmingham to recover for injuries he allegedly had received during the course of his employment. The trial court dismissed the City as a defendant, and he appealed. This Court held:
 "Appellant further argues that the City had actual notice of the incident, and that actual notice rendered strict compliance with § 11-47-23
unnecessary. Appellant, in addition to filing an accident report, did communicate, cooperate, and maintain contact, with the City. However, the required notice must be served upon the authorized representative of the City, in this case, the city clerk, and disclosure to any other division or supervisor cannot be treated as notice for the purposes of instituting a claim. Moreover, in filing an accident report and receiving treatment, appellant did not express an intention to sue. Therefore, actual notice cannot be allowed to replace the statutory formal notice-of-claim requirement. Mere knowledge of the incident resulting in injury does not satisfy the objectives of the notice-of-claim statute.
 "Citing City of Montgomery v. Weldon, 280 Ala. 463, 195 So.2d 110 (1967), appellant argues that the noncompliance with § 11-47-23 should be excused under an estoppel theory. Weldon can be distinguished factually from the case sub judice. In Weldon, an adjuster contacted the injured party on behalf of the city on numerous occasions during the six-month period and assured the injured party that the claim had been perfected and that no further action was required. This Court held that the city, through its adjuster, had actively misled the injured party and had done things that caused an injured citizen to rely, to believe, to act, and to change his position in such a way that he would suffer injury if such a defense (failure to timely present the notice of claim) were allowed to bar a recovery. *Page 568 
 "Appellant asserts no course of conduct by the City in the instant case that induced reliance and caused him to change his position to his detriment or prejudice. Appellant did not receive any assurances or promises from an adjuster or any other person representing the City. We reject the contention that requesting information, maintaining contact, and giving directions regarding treatment are tantamount to the assurances received in Weldon."
547 So.2d at 458-59.
 III.
Based on the foregoing, the judgment of the trial court in favor of the City defendants is due to be affirmed. We are also of the opinion that the trial court did not err in entering the partial summary judgment in favor of Robinson. Consequently, the trial court's judgment is due to be affirmed.
This opinion was prepared by retired Justice Hugh Maddox, sitting as a Justice of this Court pursuant to § 12-18-10(e), Ala. Code 1975.
AFFIRMED.
Moore, C.J., and See, Brown, Harwood, and Stuart, JJ., concur.
[1] The City of Mobile, in its brief on appeal, states that the City appealed the personnel board's decision to the circuit court, which reinstated the 10-day suspension, but that the Court of Civil Appeals reversed the judgment of the circuit court. Although our attention has not been directed to the record where these facts appear, we do note that the Court of Civil Appeals, in Mobile County Personnel Board v. City ofMobile, [Ms. 2001038 April 26, 2002] 833 So.2d 641 (Ala.Civ.App. 2002), held that the personnel board's decision to reduce Sgt. Robinson's suspension was supported by substantial evidence, and the court reversed the trial court's judgment and remanded the cause to the trial court.
[2] In his charge of discrimination, Stabler stated that he was a white male and that Sgt. Robinson was a black male.
[3] The City of Mobile Police Department was not named as an appellee in Stabler's notice of appeal.
[4] Apparently, Sections 1.06.05 and 1.16.02 are in the police department's internal rules.
[5] The trial judge, in his amended order, dated February 1, 2002, considered the City defendants' motion to dismiss and Robinson's motion for a partial summary judgment. In his amended order, the trial judge amended an order he had entered on November 27, 2001, as to Robinson, and made the amended order final pursuant to the provisions of Rule 54(b), Ala.R.Civ.P.
[6] The trial judge, in his amended written order, after stating that he had considered "Count Three claiming damages for the alleged negligent failure of [Robinson's] employer to adequately supervise and monitor [Robinson]," concluded that "[t]his Count states no claim against [Robinson] and is dismissed." On appeal, Stabler does not argue that the trial court erred in dismissing Count Three as to Robinson.
[7] In Patrick, the Court stated:
 "Patrick's final claim, charging the defendants with tortious interference with his employment contract, arises solely under state law. Therefore, this claim is subject to the Alabama notification requirement. Patrick does not allege that he complied with the statute by filing a sworn statement with the city within six months of the date his cause of action accrued, nor does he raise any challenge to the applicability of this `condition precedent' to his state law tort claim. Therefore, the court will dismiss this claim."
793 F. Supp. at 304 (footnote omitted). Footnote 8, omitted from the portion of Patrick quoted above, reads as follows:
 "The Alabama Supreme Court has held that a plaintiff may meet the requirements of this provision by filing suit within the six month period, even if no sworn complaint is filed with the city. Diemert v. City of Mobile, 474 So.2d 663 (Ala. 1985). However, Patrick does not allege that his suit was filed within the six-month period nor does that appear to be the case. Patrick filed the complaint in this case on October 2, 1991. Although he does not identify the precise date of his discharge, it apparently occurred sometime after a special council meeting held on April 6, 1990 — almost one and a half years prior to the initiation of this action."
793 F. Supp. at 304.
[8] The holding is as follows:
 "Even were the court to find that Meckenberg's state claims had substantive weight sufficient to defeat summary judgment, the claims are nevertheless barred due to her failure to serve OTB [Off-Track Betting] with a notice of claim as required under § 618 and § 619(6) of the N.Y. Rac., Pari-Mut. Wag. and Breed. Law. Under § 618 and § 619(6), a plaintiff seeking to maintain an action `for damages' against OTB or an employee of OTB must file a notice of claim or her claims will be dismissed. See also Kelly v. New York City Off-Track Betting,[Ms. No. 89, Civ. 5984], (S.D.N.Y. April 2, 1991) (Martin, J.)[unpublished]; McNeil v. Aguilos, 831 F. Supp. 1079, 1085 (S.D.N.Y. 1993) (Sotomayor, J.) (compliance with state notice of claim requirements condition precedent to tort action). Meckenberg argues that the inclusion of state claims in a plaintiff's complaint with the New York State Division of Human Rights (`NYSDHR') or charge with the EEOC may serve as notice under § 618. However, § 618 specifies a particular form of notice and manner of service. These requirements are not satisfied by the inclusion of state claims in either a NYSDHR complaint or an EEOC charge. See, e.g., McNeil, 831 F. Supp. at 1085 n. 5 (particular state notice requirements not fulfilled by EEOC filing). While a plaintiff may be given permission to file a late notice of claim pursuant to N.Y.Gen.Mun.Law § 50-e(5), such discretion is within the exclusive province of state courts."
42 F. Supp.2d at 384-85.
[9] The city clerk in Diemert prepared an affidavit, in which he stated that a sworn statement of claim relating to the state-law claim was filed in his office, but that "the claim was not received by his office until May 20, 1981." The record in the Diemert case, however, clearly shows that the summons and complaint in that case were served on the city clerk on August 1, 1980, and that the alleged wrongful-death occurred on April 13, 1980.